GUY C. BARTON ET AL., APPELLANTS, V. UNION
CATTLE COMPANY, APPELLEE.

[FILED DECEMBER 31, 1889.]

**Waters:** POLLUTION : INJUNCTION. Plaintiffs are the owners of
a tract of land through which the Papillion creek flows, and
which land is used for general farming purposes and for stock
raising, watering their cattle from the creek. The defendant
owns a larger tract of land immediately adjoining, up the stream
from the plaintiffs. The defendant erected a large feeding stable
for cattle, in which were kept and fed a maximum of 3,750 head
of cattle. The barn was washed out by means of steam pumps
twice daily, and the dung, urine, and droppings from the cattle
carried by means of sewers into the creek, and by force of the
stream, down to and upon the plaintiffs' land, thereby fouling
and polluting the water and rendering it unfit for use, creating
an atmospheric stench and nuisance. This was continued for
about two years. In an action in equity by the plaintiffs against
the defendants, *held*, that the defendants would be enjoined from
continuing such nuisance.

APPEAL from the district court for Sarpy county.
Heard below before DOANE, J.

*Hall & McCulloch,* for appellants:

An injunction in a case of this kind will not be refused
because the damage is slight, or because it entails expense
and inconvenience to the aggressors. (*Stockport Water
Works v. Potter,* 7 H. & N. [Eng.], 160 ; *Clowes v. Stafford-
shire Potteries Co.,* L. R. 8 Ch. App., 125; *Goodson v.
Richardson,* 9 Id., 224; *Wilts v. Swindon Water Works
Co.,* 9 Ch. App., 451.) The pollution of streams cannot
be adequately compensated for by damages. (*Tuolumne
Water Co. v. Chapman,* 8 Cal., 392 ; *Holsman v. Boiling
Springs Bleaching Co.,* 14 N. J. Eq., 346 ; *Atty. Gen.
v. Steward,* 5 C. E. Green [N. J.], 417 ; *Davis v. Lam-
bertson,* 56 Barb. [N. Y.], 480; *Corning v. Troy Factory,*

Barton v. Union Cattle Co.

40 N. Y., 191; *Lyon v. McLaughlin*, 32 Vt., 423; *Silver Springs Co. v. Wauskuck Co.*, 13 R. I., 611; Gould on Waters, sec. 545; *Bealy v. Shaw*, 6 East [Eng.], 208; *Pennington v. Brinsop Hall Coal Co.*, 5 Ch. D., 769.) Injunction is the proper remedy for injuring a stream by discharging sewerage therein. (*Holt v. Rochdale*, L. R. 10 Eq., 354; *Atty. Gen. v. Cockermouth*, 18 Id., 172; *Same v. Hackney Board*, 20 Id., 626; *Goldsmith v. Tunbridge*, L. R. 1 Ch. App., 349.) Lapse of time will not prevent injunction unless prescription has been established, which cannot be claimed here. (*Stein v. Burden*, 24 Ala., 130; *Polly v. McCall*, 37 Id., 30; *Crosby v. Bessey*, 49 Me., 539; *Campbell v. Seaman*, 63 N. Y., 582; *Flight v. Thomas*, 10 Ad. & El. [Eng.], 590; *Crossley v. Lightowler*, L. R. 3 Eq. Cas., 279.)

*J. M. Woolworth*, for appellee:

A riparian proprietor may make a reasonable and legitimate use of the water, even though it is thereby reduced in amount or damaged in quality. (*Haskins v. Haskins*, 9 Gray [Mass.], 390; *Gould v. Boston Duck Co.*, 13 Id., 442; *Prentice v. Geiger*, 74 N. Y., 341; *Snow v. Parsons*, 28 Vt., 459.) Reasonable use is a question of fact: this fact was found by the court below, there was abundant evidence to support it, and the judgment should not be reversed. (Cases *supra*; *Hayes v. Waldron*, 44 N. H., 580; *Merritt v. Brinkerhoff*, 17 Johns. [N. Y.], 306; *O'Riley v. McChesney*, 49 N. Y., 372.) The true test of the right to foul water is the naturalness of the use. In this case the use was a natural one, and the waters were not fouled by substances from beyond the premises. (*Losee v. Buchanan*, 51 N. Y., 477; *Penn. Coal Co. v. Sanderson*, 94 Pa. St., 302.) The industry is one of considerable public importance, and should not be suppressed for the sake of a slight advantage to plaintiffs. (*Richard's Appeal*, 57 Pa. St., 105; *Penn. Coal Co. v. Sanderson*, supra; *Atchison v. Peterson*, 20

Wall. [U. S.], 507.)   Appellants having by their silence
acquiesced in the improvements made and expenses in-
curred by appellee, should now be left to their action for
damages. (*Atty. Gen. v. Sheffield Gas Co.*, 3 DeG., M.
& G. [Eng.], 304; *Tash v. Adams*, 10 Cush. [Mass.], 252;
*Bassett v. Salisbury Mfg Co.*, 47 N. H., 426, 439; Pom-
eroy, Eq. Jur., 817.)

COBB, J.

This cause was appealed from the judgment of the dis-
trict court of the county of Sarpy, which dissolved the
injunction against the defendant and dismissed the action
of the plaintiffs.

The suit was brought to restrain the defendant from pol-
luting the waters and injuring the flow of the current of
Papillion creek, by discharging into it the manure and
offal from the extensive cattle-feeding barns maintained by
the defendant, in such manner and degree as to injure the
stream for husbandry, and destroy it for watering live
stock on the adjacent premises of the plaintiffs.

The facts appear, that in 1885 the plaintiffs bought two
parcels of land lying on said stream; the one of 80 acres
was originally pre-empted by Gilmore, and was bought of
one Frost, by which names it is designated; the other, of
160 acres, was bought of Gates, after whom it is called,
both lying on the creek below the defendant's lands and
barns.   In the same year, the defendant bought 400 acres
of land on the creek, adjacent and above the lands of
plaintiffs, for feeding-barns and grounds for its cattle.   The
barns are alleged to provide stalls for 3,500 cattle, each
animal having a small separate stall, ranged in rows, heads
and tails, in uniformity, with aisles for feeding between
head rows, and the like between tails for carrying away
manure and offal—the droppings falling into a trough to
be carried off by a flow of water in quantities, two or
three times daily, and thus conveyed to a sewer through

which it is carried on into the stream, amounting to 1,000,-
000 gallons daily. By this method, it is claimed by the
plaintiffs, the water of the stream is disturbed and polluted,
rendered foul for all common uses, and impregnated with
noxious exhalations, destructive to husbandry, and dan-
gerous to health. The plaintiffs ask that the judgment
below be reversed, that the injunction against the defendant
be restored and continued, remedying the injuries com-
plained of, and for general relief.

The answer of the defendant admits the location of the
land and property of either party on Papillion creek, in
Sarpy county, as alleged; and admits maintaining the
cattle barns in the manner stated; and sets up that the
plaintiffs had notice and full knowledge of the manner
and results of defendant's business prior to establishing it,
and consented thereto, and therefore have no cause of com-
plaint.

Upon the trial, the allegations of the petition as to the
ownership and occupation of the property constituting the
plaintiffs riparian proprietors of a portion of the small
stream called the Papillion, in Sarpy county, were fully
proved and that they owned and occupied said property on
either side of said stream for general farming and cattle
raising purposes. The allegations of the petition as to
the occupation of a large tract of land upon said stream,
immediately above and adjoining the land of the plaintiffs,
by the defendant company, and the use of it by said
defendant in the manner and for the purpose as set out in
the plaintiffs' petition, was also fully proved. The nature,
character, and extent of the damage and injury to the
plaintiffs, caused by the use of the defendant's feeding
barn, and the casting of the manure and urine of their
cattle, and other foul and deleterious substances therefrom,
into the said stream, and such substances mixing with the
water of said stream and floating down to and upon the
land of plaintiffs, was also proved. I shall not deem it

necessary to set out specifically the dates of the acquisition of their several rights in their respective properties upon said stream, by the parties plaintiffs and defendant, as upon a careful examination of the evidence applicable to that branch of the case it does not appear that either party has acquired any prescriptive rights or been guilty of laches which can be urged against them in the case.

While from the evidence it may be deemed probable that the nuisance to the plaintiffs' land, by the defilement of the water of the creek, was aggravated by the discharge of premature calves, or, as one of the defendant's witnesses calls them, "slumps or deacons," therein, along with the ordinary dung and urine from the cattle, during a portion of the time covered by the pleadings, to an extent not to be apprehended generally in the future, yet it appears from the evidence that the method used by the defendant of using warm or heated feed tends to cause cows to prematurely drop their calves; and where large numbers of them are kept together and fed in that manner, an entire cessation of that source of defilement is scarcely to be expected. But aside from this, it is fully established by the evidence that the maintenance of defendant's feed stable in the manner contemplated by its owner, and those skilled in that method of feeding cattle, and operated strictly in accordance with the rules and requirements of the system adopted, contemplates and will inevitably cause the destruction of the stream below so far as its value to the plaintiffs is concerned, and for the use and purpose for which it has heretofore been deemed most useful and valuable.

Considerable evidence, as well as discussion, on the part of defendant, is devoted to the proposition that the injury complained of is trifling, and it is sought to show that plaintiffs may provide means of watering their stock without resorting to Papillion creek, by the outlay of a few hundred dollars and an annual expenditure of twenty per

cent of the original cost. To this point defendant cites the case of *Jacobs v. Allard*, 42 Vt., 33. In that case plaintiffs .were the owners and operators of a starch mill propelled by water; defendant was the owner of a shingle mill on the same stream above. The cause of action was "that the defendant, with the intent and design to injure the orators and damage and hinder them from the use of the water for the purpose of their starch factory, threw into the stream the sawdust and shavings and waste from the shingle mill, * * * and that they render the water impure and unfit for making starch, and clog the penstock and prevent the use of the starch factory," etc. The court, in the opinion, say: " The evidence makes a strong impression on our minds that much of the trouble which the plaintiffs claim, and give evidence to show that they experience in the condition of the water as it comes to their works, is attributable to the manner in which they have constructed and adjusted a new dam, in reference to their works, and to the lack of proper fenders and strainers to protect against impurities that may get into the stream from the mills and works above the plaintiffs'. It would seem that by modes and means which they could, without unreasonable pains and expense, have adopted and put in use, they could have secured themselves from the troubles complained of, while the defendant was using his shingle mill and letting the sawdust and waste from it go into the stream."

The distinction between the above case and the case at bar, in respect to the remedy suggested, is that in the one case it is a prevention of the effect of the pollution, and in the other it contemplates the enduring of the effect of the pollution of the stream, but suggests the creation of an artificial water-course to supply plaintiffs' land, and contemplates the abandonment of the stream which is the subject of the litigation. The difference, as it seems to me, is radical in principle; and I do not think that the com-

paratively small cost at which plaintiffs might be able to supply water for their cattle from an independent source can be considered in connection with their right to have the stream remain uncontaminated, in the manner shown by the pleadings and bill of exceptions.

I cannot agree with defendant in the assertion in the brief under the second point, that "The waters of the Papillion, before the building of the defendant's barn, were unfit for cattle." I do not so understand the evidence. While it was doubtless inferior in sparkling clearness to the waters of streams of mountainous regions, where the soil is poor, consisting in great part of sand and gravel, the evidence, as a whole, fails to distinguish it from the general run of Nebraska streams of about the same size, in respect to the clearness and salubrity of its waters and the height of its banks and firmness of its bottom. That it has been used by the inhabitants of the country along its banks, for the purposes of stock water, since the first settlement of the territory, is sufficiently established by the evidence.

Defendant, in the brief, under the third point, uses the following language: "We admit the general rule that the proprietor above must so use the water as not to impair the enjoyment of it by the proprietor below, and therefore must not pollute it. But that general rule is subject to a qualification inherent in the nature of the subject and the relative rights of the parties." The rule is stated in nearly the same language by Judge MAXWELL, in the article on Injunctions, 10 Am. and Eng. Enc. of Law, 844: "Every owner of land through which a stream of water flows is entitled to the use and enjoyment of the water, and to have the same flow in its natural and accustomed course, without obstruction, diversion, or pollution. The right extends to the quality as well as the quantity of water. If, therefore, an adjoining proprietor corrupts the water, an action will lie against him." And this is the law substantially as

laid down in the cases there cited, especially *Holsman v. Boiling Spring Bleaching Co.*, 14 New Jersey Eq., 335 ; *Richmond Mfg. Co. v. Atlantic D. Co.*, 10 R. I., 106; *Gardner v. Trustees, etc.*, 2 Johns. Chan., 161 ; *The Mayor, etc., of Baltimore v. Warren Mfg. Co. et al.*, 59 Md., 96.

These cases are authority for the plaintiffs, in the case at bar, as to all its branches.    In most or all of them it was held that an injunction would be granted without regard to the magnitude of the interest enjoined.

It is true, as stated by defendant in the brief, that no complaint is made that the defendant's barns were improperly built or negligently managed.    Nor can it be denied that the defendant's business might be legitimately carried on, without damage to adjoining land owners, upon a stream of the size of the Missouri or the Platte, but it is manifest from the evidence that it cannot, in the magnitude described in the evidence, be carried on without infringing upon the rights of the lower land owners, upon a stream of the size of the Papillion.

I do not deem it necessary to discuss the question whether the plaintiffs have a remedy by action at law ; for I understand it to be settled by the authority of the cases cited, as well as many others, that a continuing nuisance, by polluting the waters of a stream, and others of a like character, may be proceeded against either at law or in equity, at the election of an injured party. (See also *Webb v. The Portland Mfg. Co.*, 3 Sum. [U. S. C. C.], 189; Angell on Water Courses, sec. 444, and cases there cited; *Atty. Gen. v. Steward,* 20 N. J. Eq., 415; *Lyon v. Mc-Laughlin*, 33 Vt., 423.)

The injury complained of by the plaintiffs is the pollution of the water-course, and not the improper or unreasonableness of the use of the water of the stream by the defendant.    This is a question of fact, and as the decree of the district court was for the defendant, it must be presumed that it found that there was no pollution of the

stream; but such finding is unsustained by the evidence as contained in the bill of exceptions, and is clearly against it.

The decree of the district court is reversed, and a decree for the plaintiffs, as prayed, will be entered in this court.

JUDGMENT ACCORDINGLY.

THE other judges concur.