JOHN A. ABRAHAM, APPELLANT, V. CITY OF FREMONT
ET AL., APPELLEES.

FILED APRIL 8, 1898.   No. 7868.

Review: CONFLICTING EVIDENCE. If the evidence is conflicting, and
    there is sufficient thereof in support of the finding and decree of
    the trial court, they will not be reversed.

APPEAL from the district court of Dodge county.
Heard below before SULLIVAN, J. *Affirmed.*

*J. M. Woolworth* and *N. H. Bell,* for appellant.

*Frank Dolezal* and *J. E. Frick, contra.*

HARRISON, C. J.

In this action commenced in the district court of Dodge
county the petition filed was in the following language:
"1. The said plaintiff complains of the said defendants
for that said defendant, the city of Fremont, is, and was
at the time of the grievance hereinafter complained of,
a municipal corporation, duly organized and incorporated
under the general law of the state of Nebraska, and has
more than 5,000 and less than 25,000 inhabitants; that
the said defendant William Fried is mayor of said city,
Arundel C. Hull is sewer inspector of said city, duly ap-
pointed and qualified to exercise the duties of said office,
and has the charge and management and control of the
sewage system of said city, and said other defendants are
members of, and constitute the common council of, said
city.
"2. Within two years last past, prior to the filing of this
petition, the said city of Fremont did construct, complete,
and put into operation, and now owns and operates, a
system of sewage in said city and the ditches connected
therewith, as hereinafter described, and has connected
with said system within said city, cess-pools, privy vaults,
butcher-shops, hotels, private dwellings, a brewery, sta-

bles, and other structures above and under ground which open and empty into said sewer a large amount of slops, fecal matter, and other filth and impurities mixed with water and the same are carried and flow through the underground pipes of said sewage system to a short distance beyond the east line of the territorial limits of said city, where the same are discharged from two pipes, a considerable distance apart, into open ditches, which ditches unite a short distance east of said city, and the water conveyed thereby, so fouled, mixed, and impregnated with filthy matters as aforesaid, continues to flow in an open ditch in a general southeasterly direction for the distance of about five miles, where it is emptied and discharged into Raw Hide creek.

"3. Plaintiff owns in fee-simple, occupies and uses, and has so owned, occupied, and used for the space of more than ten years last past, for general farming, stock raising, and stock feeding purposes two tracts of land in Douglas county, Nebraska, lying and situate on both sides of said Raw Hide creek and abutting thereon, to-wit: the east $\frac{1}{2}$ of section 16 and the east $\frac{1}{2}$ of the northwest $\frac{1}{4}$ of section 16, in township 16, range 10; also the NE. $\frac{1}{4}$ section 7, and the east $\frac{1}{2}$ of the NW. $\frac{1}{4}$ of section 8, the east $\frac{1}{2}$ of SE. $\frac{1}{4}$ section 6, the west $\frac{1}{2}$ of the SW. $\frac{1}{4}$ section 5, the SE. $\frac{1}{4}$ of the SW. $\frac{1}{4}$ of section 5 and the SW. $\frac{1}{4}$ of the SE. $\frac{1}{4}$ section 5, all in township 16, range 10 east, all of which land is situate on said Raw Hide creek below the point at which said ditch empties into the creek.

"4. Said Raw Hide creek is a small stream of water which flows all the year round in a general southeasterly direction through Dodge county and into Douglas county until it reaches the Elkhorn river in said section 16, into which river it there empties. In its course it flows through plaintiff's land in sections 5 and 8 as described for the distance of more than a mile and for the distance of about a half a mile through plaintiff's said land in said section 16.

"5. The plaintiff raises, feeds, and pastures a large

amount of stock on his land as aforesaid, and prior to the grievances hereinafter complained of the water in said Raw Hide creek, where it flows through plaintiff's land as aforesaid, was clear, pure, wholesome, and fit to be used, and was used largely by the plaintiff and others for the purpose of watering stock and other farming and domestic purposes, and plaintiff has been accustomed for years to cut ice for the use of his family from a pond or lake on his premises, into which lake water flows from said Raw Hide creek.

"6. That since said sewer ditch had been discharged into said Raw Hide creek as aforesaid the waters of the creek below the mouth of the ditch, by reason of the filthy waters coming through the sewer and discharged from said ditch into said creek, has gradually become, where it flows through the plaintiff's land, foul and unfit to be used and cannot be used for farming, domestic, or stock watering purposes, and the water of said lake has become unfit for taking ice therefrom as aforesaid, and such water, by reason of said impurities wrongfully and illegally discharged therein by said city, emits unwholesome and unhealthful gases and stenches, which disturb the comfort and enjoyment of the plaintiff, his family and tenants, tends to, and will eventually, if said ditch is allowed to discharge into said stream, as the filth therefrom accumulates in pools, eddies, and backwater of the creek, become injurious and dangerous to the health and lives of plaintiff, his family, and others who reside on or near the creek below the mouth of said ditch and use the water of the creek for the purposes aforesaid.

"7. That all of said acts of the defendants in digging said ditches, thereby discharging the contents of said sewage system into said Raw Hide creek, were done without the consent of plaintiff and without his knowledge.

"8. The injuries so caused to plaintiff and his said land and the occupation, use, and enjoyment of the same are continuous injuries and if not stopped by order of this

court will necessarily become greater, increase, and grow worse as the said city makes other and further connections with its sewage system and thereby discharge a greater amount of slops, waste, and filthy material into said creek, and because of the fact that said slop, waste material, and foul matters accumulate and have been accumulating more and more and from day to day along the banks and in the pools and eddies of said creek, and particularly in the same in said section 16, where it runs through the plaintiff's land, because of the fact that the water from the Elkhorn backs up the Raw Hide for the distance of about two miles, for which distance the creek has no perceptible current, and such impure matters flowing down the same are precipitated or lodged when they reach such stagnant water; that by reason of the nature of said injuries damage therefor cannot be computed in money and the plaintiff has no adequate remedy at law, and to seek his remedy at law would involve the parties to this action in a multiplicity of suits; that by reason of the premises the plaintiff will sustain great and irreparable injury if the defendants are not prohibited and restrained from continuing the infliction of such injuries upon plaintiff."

The relief asked was that the city named and its officers be perpetually enjoined from a further continuance of the acts of which complaint was made in the petition. The first paragraph of the answer was as follows:

"Come now the said defendants, and for answer to the petition of the plaintiff filed herein admit that the defendant, the city of Fremont, is a municipal corporation and that the other defendants are the officers, members of council, and mayor, respectively, of said city, as in said petition alleged, and deny each and every other allegation in said petition contained."

The further portions or paragraphs of the answer, some fifteen in number, were of matter mainly admissions and in avoidance of the grievances alleged in the petition. The reply was directed to these latter parts of the answer.

At the close of a trial the court made findings and rendered a decree, stated in the journal entry in part as follows:

"This cause came on to be heard upon the pleadings and evidence and was submitted to the court; upon consideration whereof the court finds for the defendants upon the issues presented by the petition and the first paragraph of the amended answer.

"The court further finds that the matters contained in the paragraphs 2 to 16, both inclusive, of the amended answer do not constitute a valid defense to the cause of action stated in the petition. Therefore it is adjudged and decreed by the court that the plaintiff's petition be dismissed and that the defendants go hence without day and recover their costs herein expended to the amount of $158.35. It is further considered and adjudged that the plaintiff recover his costs herein expended on the trial of the issues joined upon the affirmative defense presented by the amended answer in the paragraphs thereof numbered from 2 to 16."

The plaintiff has appealed to this court. It is conceded by the parties that, in the main, the law applicable to this case was settled by this court in its opinion in *Barton v. Union Cattle Co.*, 28 Neb. 350, to the effect that where a party fouls and pollutes the waters of a running stream, rendering them unfit for use or thereby creating a nuisance, the continuance of the acts from which such results flow will be enjoined at the suit of an injured person. Whether the acts, the subject of complaint, caused the pollution of the waters of a stream or created a nuisance are in each case, as in this at bar, questions of fact.

It appeared in evidence that the plaintiff lived distant from Fremont about nine or ten miles and quite near the "Raw Hide," the stream of water which had a portion of its course through lands owned by him, and that he had used of its water for the purposes stated in the petition in this action; that the city of Fremont had established and constructed the system of sewerage as alleged, and

that there were some 105 connections therewith in the city of the general character and nature stated in the petition; that through the system there ran each twenty-four hours about 3,000,000 gallons of pure water, into which and away with which flowed all liquids and solids which went into the sewers from any and all sources; that it was conducted through two large pipes to a point near the city, where it all came together in an open ditch and ran in a stream probably about four feet wide and approximately two feet deep, and continued its course in this ditch prepared for the purpose some five or six miles of distance to the place of its discharge into the "Raw Hide," where it mingled with the water of said stream and from there, as the stream ran, it was some three or four miles down to the home of the plaintiff. The "Raw Hide" is one of the surface streams such as we have in this state, apparently, so far as the evidence discloses, not fed to any extent by or from springs, but derives its waters almost wholly from surface drainage, has its rise or source in Colfax county and flows into the Elkhorn river in Douglas county. During rainy seasons or years it is of constant flow. During dry seasons or years it at times is without flow, and portions of its channel or bed entirely dry. When it flows it is sluggish and with but little current or speed. The stream being apparently composed of surface drainage may be denominated a natural sewer, into which go and flow all the impurities drawn off by the surface waters of the tract of land drained by the stream.

The contention on appeal is that the finding and decree of the trial court were wrong and without sufficient support in the evidence and that there should be in this court a contrary finding and decree. Between thirty and forty witnesses were called and examined for each party and the record of the evidence is voluminous, too much so to set forth an analysis of it here or even to summarize it in all its details. We have carefully perused and considered it and discovered it to be, to a very considerable extent, conflicting.

It is urged for appellant that a great deal, if not the major portion, of the evidence for appellees, considered as a whole, is what is known as negative evidence or testimony, and hence is of the "weakest species" of evidence, and not entitled to much weight. That some of the evidence introduced on behalf of the appellees was negative in its character is true, but the greater portion of it was not so, but was devoted to an attempt to establish certain existent conditions relative to the subject-matters of the controversy.

The counsel for the parties in the briefs filed have referred to and quoted from a written opinion which they state was filed at the time of decision of the cause by the trial judge. Neither the original nor a copy of any such written opinion is in the record presented to this court, but portions of it which have been quoted by counsel we feel at liberty to consider and use herein. In the opinion, it seems, was a finding as follows: "Viewed comprehensively it cannot, I think, on the evidence be affirmed that there has been, or is, any casual connection between the Fremont sewage and the condition of the waters at the plaintiff's farm. The clear weight of the crude evidence is to this effect." This was no doubt the finding on which the disposition of the case turned, on which the decree was predicated, and was certainly one which, if sustained by evidence, was fully determinate in its character of the issues.

It was of the undisputed facts that the sewage of the city combined with the clear water, which, as we have before stated, ran through the sewerage system every day, was discharged into the stream which had its course through the plaintiff's land; and the main further question to be ascertained from the evidence was whether it was the efficient cause of the alleged existent conditions of the waters of the stream at his place. Relative to this, if the evidence adduced for the complainant was alone considered, it was clearly sufficient to support the averments of the petition and to warrant a decree in his favor; but a

thorough examination of all the evidence, conflicting as it is, convinces us that the finding and decree as rendered are sustained by sufficient of the evidence to call for their being left undisturbed and unreversed.

                                    AFFIRMED.

SULLIVAN, J., took no part in the decision.