THE WESTON PAPER COMPANY *v.* POPE ET AL.

[No. 18,840.    Filed June 22, 1900.    Rehearing denied Oct. 31, 1900.]

WATERS AND WATER COURSES.—*Pollution.*—*Drains.*—*Manufactures.*
—*Damages.*—The rule recognizing the right of a city located on the banks of a stream to discharge its sewage therein, or of a landowner in developing and utilizing the natural resources of his land to discharge water therefrom, which by its natural flowage finds its way to lower lands or into streams, does not apply to a company engaged in the manufacture of articles of commerce for its own profit, which might be operated elsewhere less injuriously to the rights of others, in bringing to its factory material from which, by artificial means, it evolves putrescent, deleterious, and other waste matter which it discharges into a stream. *pp. 400, 401.*

SAME.— *Pollution.*— *Manufactures.* — *Riparian Proprietors.* — *Damages.*—The fact that a manufacturing company has expended a large sum of money in the construction of its plant, and that it conducts its

Weston Paper Co. *v.* Pope.

business in a careful manner and without malice, will not relieve it from liability to a riparian owner for damages for depositing refuse matter into a stream.  *pp. 401, 402.*

WATERS AND WATER COURSES.—*Pollution.—Riparian Proprietors.— Damages.*—The fact that a water course is already contaminated from various causes does not entitle others to add thereto, nor preclude persons through whose land the water flows from obtaining relief by injunction against its further pollution.  *p. 402.*

SAME. — *Pollution. — Riparian Proprietors.—Damages.—Estoppel.—* A riparian owner who donated straw to induce the construction of a strawboard plant and stood by while a large sum of money was expended in its erection, without knowledge or notice that in the operation of the plant the waters of a stream would be unlawfully corrupted and a public nuisance thereby created, is not precluded from asserting a claim for damages for injury to his property and for an injunction.  *p. 402.*

DAMAGES.—*Waters and Water Courses.—Pollution.—Riparian Proprietors.*—In an action by a riparian owner against a manufacturing company for damages for the pollution of a stream, the court was not restricted to the mere depreciation of property in ascertaining the damages, but might take into consideration the inconvenience and discomfort to plaintiffs and their families caused thereby.  *pp. 402, 403.*

From the Shelby Circuit Court.  *Affirmed.*

*R. A. Black, D. L. Wilson, W. A. Yarling, E. Marsh* and *W. W. Cook,* for appellant.

*K. M. Hord* and *E. K. Adams,* for appellees.

HADLEY, J.—Appellees sued the appellant, a corporation, for damages and for an injunction forbidding the discharge into Brandywine creek of the putrescible, fermentable and otherwise deleterious waste from the appellant's strawboard works situate on the border of said creek near the city of Greenfield in Hancock county.

Appellees own a farm of 160 acres located on both sides of the creek at a point three miles below appellant's works, upon which for thirty years they have resided and engaged in the business of farming and stock-raising.  The lands contiguous to the stream are used for grazing farm animals and so arranged in fields that live stock has ready access to

the stream, where the large number kept therein always found plenty of water, which water privilege was of great value and enhanced the value of appellees' farm; that prior to the use of the stream by appellant the stream contained fish suitable for food with which appellees supplied their table. In 1894 appellant completed its said mill to manufacture paper and other products from straw, and has continuously, since completion to this date, operated said mill in the manufacture of paper, and used therein a large amount of straw and water with lime and one and one-half gallons per day of muriatic acid, eighteen degrees in strength, and from said mill discharged into the stream per day about 500,000 gallons of water containing in suspension a large amount of matter which was inert and innocuous and which was deposited in the bottom and along the sides of the stream, and which water also carried in solution into the stream a large amount of fermentable and putrescible matter which would ferment and putrefy and give off noxious and offensive odors, injurious to health and comfort; that the inert matter so deposited along the banks and lodged against obstructions in the stream would become impregnated with the putrescible and fermentable matter and when exposed to the sun's heat would putrefy, and in addition to its offensive and deleterious odors would promote the growth of a water moss which fed upon it, and which, when becoming detached, floated down the stream, gathered and accumulated in large quantities upon obstructions in the stream, upon the banks, and in quiet pools in the stream, and there decayed, breeding large numbers of maggots and other vermin, and became itself a source of other noxious and offensive odors on the lands of the appellees and many others; that at times the fish in the stream were killed by said waste matter and floated and collected against obstructions and there putrefied and gave off other noxious and offensive odors; that at times the water of the stream would overflow appellees' said lands and deposit

thereon and upon the grass the sediment carried in solution and suspension, whereby the grass was killed; that the waste water thus discharged by appellant into the stream was about equal in volume to that flowing in the stream at an ordinary stage of water in the months of July and August; that Greenfield is a city of 6,500 inhabitants, and the sewage from a general system of sewers in the city was turned into the stream in 1895, three miles above appellees' farm, since which time said noxious and offensive odors and conditions have continued with increased intensity to the commencement of this suit; that the pollution of said water by natural causes and by the said sewage was of itself sufficient to render said water unfit for domestic use or for animals to drink, but not to cause the vile odors and stench above stated; that said vile odors extended a distance of eighty rods from the stream; that in hot weather said odors were so strong, offensive, and unwholesome as to require the plaintiffs to keep the windows and doors of their dwellings closed to exclude them, greatly to the discomfort of themselves and families; that if the said pollution of the stream by appellant shall be permitted, it will lessen the value of appellees' farm $5 to $10 per acre; that by reason of the pollution of said water by the appellant, the rental value of appellees' farm has been decreased, in the period prior to the commencement of this suit, the sum of $250, and the appellees have been damaged thereby $250; that at the commencement of this suit appellant was discharging substantially all of said corruptible matter into said stream, and was then proposing and asserting its right to continue to do so; that appellant since 1898, by the use of purifying devices, has diminished the amount of deleterious matter discharged into the stream and has lessened the odors therefrom, but still continues and will still continue to discharge therein such quantities of said waste matter as will materially increase the pollution of said stream and cause the accumulation of putrescible matter and the emanation therefrom of

strong, offensive, and noxious odors, to the injury of the plaintiffs; that said odors injuriously and materially affect the citizens and owners and occupants of lands along said stream, including the appellees, and materially lessen their comfort and happiness, and affect the appellees in a manner peculiar to themselves and different from the general public; that said conditions constitute a nuisance and the damages are immeasurable by a pecuniary standard; that appellant, in the construction of its plant in 1893, expended $90,000 in permanent structures, and, before beginning the construction and during its progress, appellees had knowledge that appellant proposed to expend a large sum of money in the erection and fitting of its mill and that it proposed to manufacture paper from straw, but appellees made no objection to such structures and contemplated business, and donated a quantity of straw to appellant to induce such location and business; but appellees were not informed and did not know or believe that the business would pollute the waters of the stream; that appellant operates its mill in a careful and skilful manner, and that use of said stream as an outlet for part of the waste water is a necessary use of said stream, and conducted in a skilful manner, and the consequent pollution of the stream is without malice or desire to injure the plaintiffs or other persons; but it is reasonably practicable for appellant to still further largely reduce the amount of deleterious matter carried into the stream; that to deprive appellant altogether from the use of said stream for drainage from its mill would compel appellant to abandon the business of paper making and thus render its plant of but little value; that the defendant owns no land bordering on said stream; that its factory and land is situate a short distance away and its said waste water is discharged into said stream through pipes laid across lands leased for that purpose.

The foregoing is in substance the facts specially found, and upon which the court concluded the law to be:

(1) That the plaintiff should recover from the defendant
$250 as damages up to the commencement of this action,
together with costs herein expended; and (2) that the
defendant should be enjoined from discharging into Bran-
dywine creek the putrescible and fermentable or otherwise
deleterious waste from its said strawboard works at Green-
field in such quantities as to have any material deleterious
effect upon the waters of said stream."

The errors assigned and not waived by failure to present
them arise upon appellant's exceptions to the conclusions
of law and the overruling of its motion for a new trial.

In the discussion it is not denied that the defendant's
pollution of the waters of Brandywine creek has injured
the plaintiffs in the enjoyment of their homes and property,
but it is denied that the plaintiffs are entitled to injunc-
tion, or to damages for such injuries, however actual and
substantial, for the reason that the defendant's straw-paper
making is a lawful business, conducted skilfully and with-
out negligence or malice, and a discharge of its waste into
Brandywine creek—the only practicable natural drainage
—is absolutely necessary to the operation of the mill.

It is urged that such use of the stream, under like cir-
cumstances, is the lawful right of the superior proprietor
and that detriment to the lower lands from the incidental
corruption of the waters of the stream, is *damnum absque
injuria*. We think it is universally held that land on a
lower level owes a natural servitude to that on a higher
level in respect to receiving the waters that naturally flow
down to it in such state of increased impurity as is imposed
by upper inhabitants from the ordinary use of their lands
for domestic purposes. Every owner is entitled to the free
use and enjoyment of his property within reasonable
bounds. He may do by his own land, in its use and de-
velopment, as he pleases, and is not answerable for the ele-
ments and forces of nature that may by natural processes
affect an inferior estate. And he is not confined to the sur-

face. He may, with a careful regard for the rights of his neighbors, develop and utilize the natural resources of his land. He may sink deep wells and bring subterranean mineral water to the surface and, having used the water for baths in a sanitarium, may discharge it where by natural flowage it will find its way to lower lands; and there is no liability, as in *Barnard* v. *Sherley*, 135 Ind. 547, 24 L. R. A. 568, 41 Am. St. 454. Or he may excavate for coal and, if water is encountered, it may, whether pure or impure, be raised and discharged, in its natural state, upon the surface where by gravitation it will find its way into a pure stream, rendering the waters thereof wholly unfit for domestic purposes; and there can be no redress, as in *Pennsylvania Coal Co.* v. *Sanderson*, 113 Pa. St. 126, 6 Atl. 453. The same rule recognizes the right of cities located upon the banks of a stream to discharge therein the city sewage, to the defilement of the water, when such discharge is necessary as the only practicable means of dispatching the sewage. *City of Richmond* v. *Test*, 18 Ind. App. 482; *City of Valparaiso* v. *Hagen*, 153 Ind. 337.

The principle underlying this class of cases is that the public has a general interest in the business carried on, as in being cured of disease by mineral water baths, and in procuring coal for fuel, and in promoting city sanitation; and since the business is of a character that it can not be conducted at any other place than where nature has located it, or where public necessity requires it to be, individual rights must yield to the public good.

The principle of these cases, however, is not applicable to the case before us. Here appellant is not engaged in the development of any natural resource or in any usual or ordinary use of its own land. Its sole business is the manufacture of articles of commerce for its own profit. It is engaged in a business that may be carried on elsewhere less injuriously to the rights of others. It is engaged in bringing to its mill, not from its own premises but from else-

where, materials from which by artificial means it evolves putrescent matter which it casts into Brandywine creek, to the serious and substantial injury of lower proprietors. This, appellant has no right to do.

No court, so far as we have observed, has gone so far as to recognize the right of a manufacturer to establish his plant upon the banks of a non-navigable stream and pollute its waters by a business wholly brought to the place, entirely disconnected with any use of the land itself, and which he may just as well conduct elsewhere, without responding in damages to those injured thereby and to injunction if the injury done is substantial and continuing. See *Indianapolis Water Co.* v. *American, etc., Co.,* 53 Fed. 970; *Robb* v. *Carnegie,* 145 Pa. St. 324, 14 Atl. 329, 22 Atl. 649; *Lentz* v. *Carnegie,* 145 Pa. St. 612, 23 Atl. 219; *Baltimore, etc., Co.* v. *Fifth.Baptist Church,* 108 U. S. 317, 2 Sup. Ct. 719, 27 L. ed. 739; *Barton* v. *Union Cattle Co.,* 28 Neb. 350, 44 N. W. 454, 7 L. R. A. 457; *Mississippi Mills Co.* v. *Smith,* 69 Miss. 299, 11 South. 26, 30 Am. St. 546.

The fact that appellant has expended a large sum of money in the construction of its plant and that it conducts its business in a careful manner and without malice can make no difference in its rights to the stream. Before locating the plant the owners were bound to know that every riparian proprietor is entitled to have the waters of the stream that washes his land come to it without obstruction, diversion, or corruption, subject only to the reasonable use of the water, by those similarly entitled, for such domestic purposes as are inseparable from and necessary for the free use of their land; and they were bound also to know the character of their proposed business, and to take notice of the size, course, and capacity of the stream, and to determine for themselves and at their own peril whether they should be able to conduct their business upon a stream of the size and character of Brandywine creek without injury

to their neighbors; and the magnitude of their investment and their freedom from malice furnish no reason why they should escape the consequences of their own folly. *Pennoyer* v. *Allen,* 56 Wis. 502, 14 N. W. 609; *City of Tiffin* v. *McCormack,* 34 Ohio St. 638; *Laflin, etc., Powder Co.* v. *Tearney,* 131 Ill. 322, 23 N. E. 389, 7 L. R. A. 262; *McAndrews* v. *Collerd,* 42 N. J. L. 189; *Heeg* v. *Licht,* 80 N. Y. 579; *Baltimore, etc., Co.* v. *Fifth Baptist Church,* 108 U. S. 317, 2 Sup Ct. 719, 27 L. ed. 739.

It is no defense that the city of Greenfield empties its sewage into the stream whereby it is polluted. The fact that a water course is already contaminated from various causes does not entitle others to add thereto, nor preclude persons through whose land the water flows from obtaining relief by injunction against its further pollution. *Dennis* v. *State,* 91 Ind. 291, 293; *Barrett* v. *Cemetery Assn.,* 159 Ill. 385, 42 N. E. 891, 31 L. R. A. 109, 50 Am. St. 168; *Wood on Nuisances,* §§448, 558.

Appellees by donating straw to appellant to induce the construction of the plant, and standing by while a large sum of money was expended in its erection, without knowledge or notice of the intended and subsequent unlawful corruption of the waters of the stream and the creation of a public nuisance, are not precluded from asserting a claim for damages and injunction. They had the right to believe that appellant would conduct its business lawfully, and, so conducting it, that they would not suffer injury to their property. Where a party acts in excusable ignorance of a material fact he is not thereby estopped. *Robbins* v. *Magee,* 76 Ind. 381; *Buck* v. *Milford,* 90 Ind. 291; *Anderson* v. *Hubble,* 93 Ind. 570.

We can not agree that there was no legal evidence to sustain the assessment of damages. There was direct evidence that a much larger amount of damages than that assessed by the court was sustained from impairment of rental value. Besides, the court was not restricted to mere depreciation

of property but might also have properly considered the inconvenience and discomfort caused appellees and their families even though there be no arithemetical rule for the estimate of such damages. *Baltimore, etc., Co.* v. *Fifth Baptist Church,* 108 U. S. 317, 335, 2 Sup. Ct. 719, 27 L. ed. 739.

Divers other reasons for a new trial are suggested but not presented, and, under the familiar rule of this court, must be held as waived.

Judgment affirmed.