David RUST, Rose Acre Farms, Inc., Lookacres, Inc., and Eggacres, Inc., Defendants-Appellants,

v.

Hubert GUINN, Jr. and Margaret Suzanne Guinn, Plaintiffs-Appellees.

No. 1–381A81.

Court of Appeals of Indiana, First District.

Dec. 29, 1981.

Rehearing Denied Feb. 10, 1982.

Roger L. Pardieck, Steven K. Robison, Montgomery, Elsner & Pardieck, Seymour, Bunger, Harrell & Robertson, Bloomington, Sharpnack, Bigley, David & Rumple, Columbus, for defendants-appellants.

James S. Kowalik, Hopper & Opperman, Sally O'Connor, Indianapolis, James R. Regester, Bloomington, for plaintiffs-appellees.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

This is an action for abatement of a nuisance and damages brought by Hubert Guinn, Jr. and Margaret Suzanne Guinn (Guinns) against David Rust, Rose Acre Farms, Inc., Lookacres, Inc., and Eggacres, Inc. (hereinafter collectively referred to as Eggacres when appropriate). Upon Eggacres' motion, the trial was bifurcated. Following a bench trial, the trial court ruled that a private nuisance existed and that such was abatable. Upon trial to a jury on the issue of damages, such were assessed against Eggacres in the amount of $9,500. Costs of the action were charged to Eggacres as well. From the judgment entered upon the jury's award, Eggacres brings this appeal. Eggacres does not appeal the initial judgment of the trial court in which the existence of the private nuisance was determined.

We affirm.

## STATEMENT OF THE FACTS

The Guinns have resided on an 80-acre farm in Jackson County since 1965. Lookacres, Inc. and Eggacres, Inc. have operated facilities for the production of chicken eggs on property adjacent to the Guinns since 1969. The combined operations employ some 495,000 chickens for the purpose. Prior to 1969 the Guinns, who are presumably persons possessed of ordinary olfactory sensibilities, enjoyed their rural home with its attendant aroma, and suffered the normal amount of flies generally encountered in farm living.

Until 1976, Eggacres employed a system of lagoons for the purpose of storing accumulated chicken manure, two of which lagoons are located within 300 yards of the Guinns' farmhouse. At times the lagoons were suffered to attain a state of overflow. The redolence emanating from the lagoons achieved such a state of odoriferocity at times as to compel the Guinns to maintain their residence in a sealed state, to curtail their regular outdoor activities, and on occasion to vacate their residence in favor of more savory environs. Mrs. Guinn testified that as a result of the foul odor, which was characterized as "a urine-like, a gas, ammonia smell," she sometimes vomited, gagged, was otherwise nauseated, and experienced a burning sensation in her eyes. Devotion of the lagoons as a means of primary waste disposal was begun to be phased out in 1976; they are now used for the purpose of storing egg wash water and also for emergency purposes. Since 1977, the lagoons have been treated bacterially to diminish the odor and to purify the water.

After the Eggacres facilities commenced operations, a significantly larger number of flies began to visit the Guinns' property at intermittent times than had previously been the case, and these were found to have generated from Eggacres. A program of fly control involving the use of sprays and insecticides undertaken by Eggacres during the years 1969 through 1974 proved ineffective, and the odor of the sprays and insecticides themselves compounded the Guinns' discomfort. In 1974, a successful method of fly control exploiting the flies' natural predators was launched, and by 1975 the fly problem subsided.

The method of waste disposal employed by Eggacres since 1976 utilizes wet manure pits maintained beneath the chicken houses to catch and temporarily hold the droppings. When these pits are filled, the contents are removed and hauled away by trucks. Eventually the material is spread over nearby fields for the purpose of fertilization. Although the change in the means of disposal proved effective in eliminating the effluvium attributable to the lagoons, the new scheme has caused additional problems for the Guinns. The trucks hauling their fresh cargo frequently pass the Guinns' property and on occasion spill portions of the guanic substance in front of the residence, resulting in odor problems.

Based upon the foregoing facts, the trial court concluded the following:

"1. That Defendants, Lookacres, Inc., and Eggacres, Inc., by their method of operation of their lawful business, did create offensive odors, as to Plaintiffs, in excess of those normally associated with farm living from 1969 through 1977, which said odors were, during said period, unreasonable to a person of ordinary sensibilities.

2. That Defendants, Lookacres, Inc., and Eggacres, Inc., by their method of operation of their lawful business, as to Plaintiffs, in excess of those normally associated with farm living from 1969 through 1975, which said populations of flies were, during said period, unreasonable to a person of ordinary sensibilities.

3. That Defendants, Lookacres, Inc., and Eggacres, Inc., by their negligence have created, and continue to create, offensive odors, as to Plaintiffs, by spilling chicken waste in front of Plaintiffs' property, which odors are in excess of those normally associated with farm living and are, therefore, unreasonable to a person of ordinary sensibilities.

4. That Defendants, Lookacres, Inc., and Eggacres, Inc., have, thereby, since 1969 maintained a private nuisance, as defined by IC 1971, 34-1-52-1, which has been and is currently offensive to the senses and an interference with Plaintiffs' use and enjoyment of their property.

5. That said nuisance is abatable.

6. That the lawful and important social and economic nature of Defendants' businesses do not preclude Plaintiffs from being compensated for the burden placed upon the free use and enjoyment of their property resulting from said nuisance."

Trial was later had before a jury wherein damages in the amount of $9,500 were assessed against Eggacres. From the latter judgment, Eggacres appeals.

## ISSUES

We have consolidated the three errors assigned by Eggacres into two issues and restate them as follows:

I. Whether the trial court erroneously instructed the jury on the measure of damages for an abatable private nuisance; and

II. Whether the trial court erroneously admitted into evidence at the trial on the issue of damages a jar of chicken manure.

## DISCUSSION AND DECISION

*Issue I. Measure of damages*

Eggacres contends the trial court erroneously instructed the jury as to the damages recoverable for the nuisance found to have existed, alleging the jury was permitted to consider improper factors in making their determination. Eggacres tendered the following instruction, which was refused by the trial court:

"It has previously been determined that the facilities of the defendants known as Eggacres and Lookacres did during the period of 1969 through 1975 constitute a nuisance as to the plaintiffs with respect to causing excessive amounts of flies and did during the period 1969 through 1977 constitute a nuisance as to the plaintiffs with respect to causing excessive unpleasant odors, and did during the period of 1976 to the present constitute a nuisance as to the plaintiffs with respect to the occasional spillage of chicken waste upon the public road in front of plaintiffs' residence. If you find from the evidence that the plaintiffs' use and enjoyment of their property was unreasonably interfered with by such conditions, you should award them damages to compensate them for the interference with and loss of the use and enjoyment of their property caused by such conditions during such period. The measure of damages which you must apply to determine the plaintiffs' damages for the interference with and loss of use and enjoyment of their property is the reduction in the fair rental value of plaintiffs' real estate caused by the nuisance conditions. In other words, the difference between what you find would have been the fair rental value of plaintiffs' real estate without such

nuisance conditions and what you find was the fair rental value with such nuisance conditions is the damage sustained by plaintiffs by reason of the interference with and loss of use and enjoyment of their real estate."

The trial court gave the following final instruction concerning damages:

"In determining the amount of damages sustained by the plaintiffs as a result of the nuisance maintained by the defendants, you may consider:

(1) Damages for interference with the plaintiffs' use and enjoyment of their property which damages are measured by the reduction in the fair rental value of the property during the period of existence of the nuisance proximately caused by the nuisance;

(2) Damages for actual expenses incurred by plaintiff in attempting to mitigate the effects proximately caused by the nuisance conditions found to have existed; and

(3) Damages for injury to health proximately caused by the nuisance.

Damages are not to be presumed. The burden is on the plaintiffs to prove by a preponderance of the evidence the damages proximately caused in the nuisance maintained by the defendants."

Eggacres contends the jury was erroneously instructed as to the proper measure of damages for an abatable private nuisance because the instruction allowed for consideration to be given to losses in addition to the diminution in rental value proximately caused by the nuisance. These losses, enumerated (2) and (3) in the instruction respectively, include actual expenses incurred by the Guinns in attempting to mitigate the effects of the nuisance, and injury to health proximately caused by the nuisance.

■ The essence of Eggacres' tendered instruction is that the extent of damages recoverable is limited to the diminution in rental value of the Guinns' property caused by the nuisance. The substance of the tendered instruction was clearly stated in the given instruction, paragraph (1). In the recent case of *State v. Bouras*, (1981) Ind. App., 423 N.E.2d 741, 744 (transfer pending) the court stated the following concerning refusal of instructions:

"Giving instructions is entrusted to the trial court's discretion, and its refusal to give a tendered instruction is grounds for reversal only if the substance of the instruction was required to be given and was not adequately covered by other instructions given by the court. *Smith v. Insurance Company of North America*, (1980) Ind.App., 411 N.E.2d 638; *Piwowar v. Washington Lumber and Coal Company*, (1980) Ind.App., 405 N.E.2d 576. A tendered instruction is required to be given only if it covers an essential element of the case supported by evidence, correctly states the law material to the case and when no other instruction covers that area of the law. *Dahlberg v. Ogle*, (1978) 268 Ind. 30, 373 N.E.2d 159; *Davis v. State*, (1976) 265 Ind. 476, 355 N.E.2d 836; *School City of Gary v. Claudio*, (1980) Ind.App., 413 N.E.2d 628; *Burkett v. Crulo Trucking Co.*, (1976) 171 Ind.App. 166, 355 N.E.2d 253; *Jackman v. Montgomery*, (1974) 162 Ind.App. 558, 320 N.E.2d 770."

Because the measure of damages sought by Eggacres was included in the given instruction, there was no error in refusing the tendered instruction.[1]

We must now consider whether the instruction given by the court was a correct statement of the law, since error is assigned to the giving of that instruction.

---

1. Although not addressed by the parties, we think the tendered instruction is probably confusing in that it could be interpreted as requiring the jury to determine anew the issue of whether a nuisance existed: "If you find from the evidence that the plaintiffs' use and enjoyment of their property was unreasonably interfered with by such conditions...." The fact

of interference was previously determined by the trial court. *See* Conclusion of Law 4, *supra*. Because of our holding that the refusal of the tendered instruction was not error, we need not determine whether this language would have been sufficiently confusing to sustain the trial court's refusal.

Recent Indiana cases have held that the general measure of damages for an abatable private nuisance is the loss of use of the land, as measured by the diminution in rental value, proximately caused by the nuisance. *Friendship Farms Camps, Inc. v. Parson,* (1977) 172 Ind.App. 73, 79, 359 N.E.2d 280; *Yeager and Sullivan, Inc. v. O'Neill,* (1975) 163 Ind.App. 466, 480, 324 N.E.2d 846; *Davoust v. Mitchell,* (1970) 146 Ind.App. 536, 543, 257 N.E.2d 332; *Cleveland, Cincinnati, Chicago & St. Louis Railway Company v. King,* (1900) 23 Ind.App. 573, 55 N.E. 875. *See also, Cox v. Schlachter,* (1970) 147 Ind.App. 530, 537, 262 N.E.2d 550; *Harrison v. Indiana Auto Shredders Co.,* (7th Cir. 1976) 528 F.2d 1107. Eggacres contends that the holdings of these cases support the proposition that the damages are to be thus *limited.* We have been directed to no cases, and our own efforts have discovered none, expressly *excluding* the damages elements at issue here.

We first note that our nuisance statutes are silent on the issue of damages recoverable. Ind.Code 34–1–52–1 defines a nuisance as follows:

"Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action."

Ind.Code 34–1–52–2 states:

"Such action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance."

And in Ind.Code 34–1–52–3, the remedies section, we find the following language:

"Where a proper case is made, the nuisance may be enjoined or abated, and damages recovered therefor."

Eggacres argues that while evidence pertaining to injury to health, indecency, and offensiveness to the senses is relevant to the issue of determining the existence of a nuisance, recovery in damages for these matters is not permitted under the Indiana statutes or cases.

We discern the issue to be essentially this: While the damages *for the loss of use of property* attributable to an abatable private nuisance are properly limited to the dimunition in the fair market rental value, may those persons harmed by the nuisance recover damages for losses distinct from those losses occasioned by the interference with the use of their property? We answer this question in the affirmative. In so doing, we are in accordance with a number of our sister jurisdictions as well as other eminent authorities.

We think that dicta found in an early Indiana case is supportive of our conclusion. In *Weston Paper Company v. Pope,* (1900) 155 Ind. 394, 57 N.E. 719, the plaintiffs were landowners who maintained a farm three miles downstream from the defendant corporation's paper mill. Discharge of effluents from the mill into the stream produced a condition found to "constitute a nuisance," and an award of damages to the plaintiffs was sustained. The court stated:

"We cannot agree that there was no legal evidence to sustain the assessment of damages. There was direct evidence that a much larger amount of damages than that assessed by the court was sustained from impairment of rental value. *Besides, the court was not restricted to mere depreciation of property but might also have properly considered the inconvenience and discomfort caused [plaintiffs] and their families even though there be no arithmetical rule for the estimate of such damages.* Baltimore, etc., Co. v. Fifth Baptist Church, 108 U.S. 317, 335, 2 S.Ct. 719 [731], 27 L.Ed. 739." (Our emphasis.)

115 Ind. at 402–03, 57 N.E. 719.

In Restatement (Second) of Torts § 929(1) (1977) it is stated:

"Harm to Land from Past Invasions

(1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for

(a) the difference between the value of the land before the harm and the value

after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred,

(b) the loss of use of the land, and

(c) discomfort and annoyance to him as an occupant."

And, Dean Prosser would not restrict the Guinns to the diminution in rental value occasioned by the nuisance as their sole remedy:

"As in the case of any other tort, the plaintiff may recover his damages in an action at law. In such an action the principal elements of damages are the value attached to the use or enjoyment of which he has been deprived, or—which often amounts to a measure of the same thing—the loss of the rental or use value of the property for the duration of a temporary nuisance ... and in addition the value of any personal discomfort or inconvenience which the plaintiff has suffered, or of any injury to health or other personal injury sustained by the plaintiff, or by members of his family so far as they affect his own enjoyment of the premises, as well as any reasonable expenses which he has incurred on account of the nuisance."

Prosser, The Law of Torts § 90 (4th ed. 1971) pp. 602–03 (footnotes omitted). *See also*, 66 C.J.S. Nuisances § 82 (1950).

In their excellent brief the Guinns cite many cases from other jurisdictions that indeed recognize damages for an abatable private nuisance are not restricted to the reduction in rental value.[2] *See, City of San Jose v. Superior Court of Santa Clara County*, (1974) 12 Cal.3d 447, 525 P.2d 701, 115 Cal.Rptr. 797; *Miller v. Carnation Co.*, (1977) 39 Colo.App. 1, 564 P.2d 127; *Nair v. Thow*, (1968) 156 Conn. 445, 242 A.2d 757; *Nitram Chemicals, Inc. v. Parker*, (1967) Fla.App., 200 So.2d 220; *Pollard v. Land West, Inc.*, (1974) 96 Idaho 274, 526 P.2d 1110; *Earl v. Clark*, (1974) Iowa, 219 N.W.2d 487; *Holmberg v. Bergin*, (1969)

285 Minn. 250, 172 N.W.2d 739; *Nevada Cement Co. v. Lemler*, (1973) 89 Nev. 447, 514 P.2d 1180; *Spencer Creek Pollution Control Ass'n v. Organic Fertilizer Co.*, (1973) 264 Or. 557, 505 P.2d 919; *Hendrix v. City of Maryville*, (1968) 58 Tenn.App. 457, 431 S.W.2d 292; *Lacy Feed Co. v. Parrish*, (1974) Tex.Civ.App., 517 S.W.2d 845.

Eggacres further contends that an award of damages over and above the diminution in rental value amounts to a double recovery, presumably because these elements of damages would be reflected in the diminution of rental value. We disagree. This argument was faced squarely in *Miller v. Carnation Company*, (1977) 39 Colo.App. 1, 564 P.2d 127, and rejected. The Colorado court therein distinguished between the plaintiff's proprietary loss, i.e. loss of use and enjoyment of land, and his personal losses, i.e. annoyance, discomfort, and inconvenience, and held that an occupant-owner may recover both, citing Restatement (Second) of Torts § 929, comment e. We agree that personal losses suffered by a plaintiff in a nuisance action, as distinct from loss of use of the property as measured in the reduction in rental value, are compensable.

Eggacres complains that the instruction given was erroneous insofar as it permitted the jury to consider "injury to health" in assessing the damages, contending that there was no competent evidence to support such award. We disagree. Mrs. Guinn testified that the pervasive odor emanating from Eggacres' operations caused her to vomit, gag, feel otherwise nauseated and sick, and experience a burning sensation in her eyes. Eggacres maintains that such lay testimony is not competent to prove a causal connection between the odors and Mrs. Guinns' physical reaction thereto. In *Davoust v. Mitchell, supra*, Judge Lowdermilk stated:

"This court has heretofore said that the trial court could consider the ordinary affairs in the lives of men and women

2. Eggacres, in reply, deigned not to "burden this Court with a lengthy argument attempting to distinguish each of these cases." Indeed, such an attempt might well have proved futile, since our reading of these cases discloses they are supportive of the proposition advanced.

and although this court cannot and does not weigh the evidence, we are of the opinion that in deciding whether the evidence is sufficient to sustain the judgment, that we, too, may consider things that happen in the ordinary affairs of life and men."

146 Ind.App. at 542, 257 N.E.2d 332.

Thus we may reflect upon our experience and in so doing find that it does not require expert medical opinion to establish a causal nexus between the exposure to extremely foul odor and the resultant physical responses to which Mrs. Guinn testified. Eggacres' interpretation that, "Parenthetically, these three cases (*Yeager & Sullivan, Davoust,* and *Cox*) also establish that isolated incidents of nausea and vomiting do not amount to an 'injury to health' under clause 3 of Final Instruction Number 4, *even assuming* Final Instruction Number 4, to be correct," is not borne out by our reading of those cases. There was competent evidence to support the giving of the instruction.

We conclude the jury was properly instructed on the measure of damages. Additionally, we note that amount of damages awarded was well within the evidence presented at trial.[3] *See Friendship Farms, supra,* 359 N.E.2d at 285.

*Issue II. The jar*

Eggacres contends the trial court erred in admitting into evidence, over strenuous objection, a jar of chicken manure. This evidence was presented to Mr. Guinn during his direct examination. He opened the jar, smelled the contents, and testified that the odor was similar to that which he experienced on his property, and which had been previously described as a "urine-like, gas, ammonia smell." The jar was then passed among the jury for their olfactory examination. Later, during the direct examination of Mrs. Guinn, she also testified that the odors were similar.

Eggacres claims the exhibit was erroneously admitted for the reasons that it was not relevant to a material issue of fact, that

it was likely to have a prejudicial impact on the jury, and that it could only have been introduced in order to arouse the empathy of the jury.

■ The admissibility of evidence is within the sound discretion of the trial court. *Tapp v. State,* (1980) Ind.App., 406 N.E.2d 296. This court will reverse a trial court for abuse of that discretion only when the trial court's action is clearly erroneous and against the facts and circumstances before the trial court or reasonable inferences to be drawn therefrom. *Dunbar v. Dunbar,* (1969) 145 Ind.App. 479, 251 N.E.2d 468.

■ The general standard regarding the relevancy of evidence is whether the evidence has the logical tendency to prove a material fact. *In re Marriage of Gray,* (1981) Ind.App., 422 N.E.2d 696. The issue in the trial before the jury was the amount of damages to be awarded, and we concluded in Issue I, *supra,* that damages for injury to health are available to a plaintiff in an action of this kind. This evidence was given to the members of the jury to help them understand the Guinns' verbal testimony, given without objection, concerning the nature of the odors to which they were subjected, which odors, according to Mrs. Guinn, caused her to become ill on several occasions. We cannot presume that all the jurors, or any one of them, were familiar with the aromatic characteristics of chicken manure. Evidence tending to illustrate the nature of the odors involved in this nuisance action is, therefore, relevant. Evidence may be found to be relevant even though its ability to persuade is extremely light. *Smith v. Crouse-Hinds Co.,* (1978) Ind.App., 373 N.E.2d 923.

Eggacres complains that this particular jar of chicken manure was not relevant for two reasons: (1) the concentration of manure in the jar was not representative of manure in an "open environment," and (2) the manure gathered from the fields, some

---

3. The Guinns' appraiser testified that the difference in rental value for the period 1969–1977 due to the nuisance was $34,200. Eggacres' two appraisers estimated the loss of rental value to be $3,740.40 and $2,160, respectively.

two years after the trial court found the odoriferous aspect of the nuisance to have abated, was not reflective of conditions during the time the nuisance existed.

 The jar of manure at issue here was demonstrative evidence. For demonstrative evidence to be admissible, that is, relevant to a material issue, the party proffering the evidence must establish a proper foundation. *Stath v. Williams*, (1977) Ind. App., 367 N.E.2d 1120. The trial court is vested with discretion to determine whether an adequate foundation has been laid. *Whitaker v. St. Joseph's Hospital*, (1981) Ind.App., 415 N.E.2d 737. Here, Mr. Guinn testified as to the manner of the manure's collection and to the place at which the manure was obtained. Mr. Guinn and Mrs. Guinn each testified that the odor of the manure in the jar was representative of the odors to which they were subjected. We cannot say the trial court abused its discretion determining that a proper foundation was established.

Eggacres next contends the jar of manure was likely to have a prejudicial impact on the jury, and could have only been proffered for the purpose of arousing the empathy of the jury.

It is true that evidence that is found to be relevant may nonetheless be inadmissible if its prejudicial impact is found to outweigh its probative value. *Smith v. Crouse-Hinds Company, supra.* The task of making this assessment is assigned to the trial court and is reviewable only for an abuse of discretion. The prejudice alleged to have been manifest upon the admission of the evidence is that once the members of the jury examined the jar and its contents, they would not likely ignore what they had smelled, and Eggacres was prevented from "fighting back." We see no abuse of discretion. The Guinns were subject to cross-examination at which time Eggacres could pursue the issue of whether the contents of the jar was representative of the odors experienced by them. We think that this evidence was neither prejudicial nor highly inflammatory. Consequently, we hold there was no error in its admission.

Having examined the issues assigned by Eggacres and finding no reversible error, we affirm this cause in all respects.

Affirmed.

RATLIFF and YOUNG (participating by designation), JJ., concur.