**Randy BANE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 780S199.**

Supreme Court of Indiana.

Aug. 17, 1981.

Lawrence O. Sells, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Frederick N. Kopec, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant, Randy Bane, was convicted by a jury of burglary while armed, Ind.Code § 35–43–2–1, and two counts of rape while armed, Ind.Code § 35–42–4–1(a). He was sentenced to ten years, thirty years, and thirty years in prison on the counts, the terms to run concurrently.

In this direct appeal, Bane challenges the sufficiency of the evidence serving to identify him as a perpetrator of the offenses.

█ On review of sufficiency claims we do not weigh the evidence nor resolve questions of credibility but look to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State*, (1970) 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer appellant was guilty beyond a reasonable doubt. *Glover v. State*, (1970) 253 Ind. 536, 255 N.E.2d 657.

Viewed in this light the evidence in this case shows that in the early morning hours of June 27, 1979, two men, after gaining entrance to a private residence, proceeded to the bedroom of the husband and wife, where they awakened them by shining light in their faces with flashlights. They were then bound, gagged and their eyes were covered. A niece was brought into the bedroom at knife point and placed on the floor of a walk-in closet. The two women were sexually assaulted by both men and about sixty dollars was stolen.

During this episode the husband and wife did not view the faces or forms of the two men at all, and when the niece did get a brief glimpse of them, she saw only that they wore ski-masks and gloves. Both men did speak several times to, and in the presence of, the three victims. At one point, the husband victim was addressed by the attacker, described by him as having the higher voice, by his first name, Jerry.

Within an hour after the episode, the three victims in speaking with investigating officers, stated that the higher voice had been familiar to them, and that it was the voice of a man whom they had known casually for about two years, and had spoken with about ten times. The man was living with the sister of a close friend of the family, and had spent several hours on a previous Thanksgiving at the residence where the attack occurred, and had spent a good deal of time with the victims on a day during which a house was being cleaned by several persons. This man was known to them as Randy. The man was appellant.

The following day at the police station, all three victims listened several times to sets of six voices, including that of appellant, and the husband and the niece selected appellant from them as one of the attackers. The wife selected another from the sets. Her mother tongue was Japanese.

Teresa Butler testified that she lived in the same house with appellant at the time of the crimes and occupied the bedroom next to his. He slept in his bedroom with Clara Vining, and their infant child. On the night of the attack the witness stayed up all night in her bedroom listening to music and talking with a friend. After appellant had retired, and between two and four in the morning, the witness heard a noise outside the house. She also heard a noise which sounded like the sliding of a window screen. Later she heard another noise outside the house. Appellant's car which had been parked earlier outside the house had a loud muffler. At about 5:45 a. m., the witness heard the alarm go off in appellant's room, and the bedroom door slam. Shortly after 6:00 a. m., she encountered appellant in the living room of the house and he did not look sleepy as he usually did at such time.

Further testimony at trial showed that on June 25, in response to an attempt by the agent of a car lot to repossess a car Clara Vining had purchased a week before, appel-

lant promised to get the money together to finish up the down payment. On June 26 he paid the balance of $25.00 due on the down payment. On June 27, after the attack and theft, he paid the regular $20 weekly payment.

At trial, all three of the victims pointed out appellant as one of the men who had attacked them. Appellant contends that their identification of him, based as it was upon voice identification is insufficient, first, because of inconsistencies and uncertainties, which the victims, primarily the wife, manifested, and second, because the corroboration of their identification is so slight.

 Identification of the perpetrator of an offense through recognition of voice is not insufficient as a matter of law. Appellate opinions do reveal however a heightened judicial concern in dealing with convictions based upon it which often takes the form of a close look at independent corroborating evidence. Nevertheless, there is no rule requiring buttressing corroborative identification evidence and voice identification has been treated as independently sufficient. *Zollatz v. State* (1980), Ind., 412 N.E.2d 1200. Equivocalities manifested by voice identification witnesses between the time of the offense and trial affect credibility and are for the trier of fact to consider, and not appellate courts. *Zollatz, supra.*

In this case, the husband testified that he formed a definite opinion that appellant was one of the attackers, during the attack, after having been addressed by his first name, Jerry, by the man with the higher voice. The niece formed the conclusion during the attack that the voice which was the higher of the two was familiar to her. Within an hour both of these witnesses told the police that the voice they had heard was that of appellant. Later, both of these victims when put to the test of a voice identification procedure, during which they were unable to see those who spoke, selected appellant as their assailant.

The wife, while admitting to uncertainty and to having failed to pick appellant from

the voice array, did support the identification of appellant in a direct manner at trial. It is apparent on the record that this witness had distinct language difficulties. The testimony of Teresa Butler was likewise supportive of their identification of appellant and the conclusion of the jury.

There was sufficient evidence for the jury to conclude that Randy Bane, the accused below, and appellant here, was one of the attackers beyond a reasonable doubt.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.