**Roy HECK, Sr., Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 15S00–8711–CR–1081.

Supreme Court of Indiana.

April 6, 1990.

Kathleen A. Dayson, Indianapolis and Joseph W. Votaw, III, Lawrenceburg, for appellant.

Linley E. Pearson, Atty. Gen. and Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Voluntary Manslaughter, for which he received a sentence of fifteen (15) years.

The facts are: The appellant, Roy Heck, Sr., and the decedent, Rickie Heck, were husband and wife. In August of 1985, Rickie started dissolution proceedings against appellant. Sometime between January 5 and 6, 1986, while the dissolution proceedings were pending, the decedent disappeared.

In late October of 1986, her decomposed remains were found buried on appellant's farm. Dr. Lee Lehman, a pathologist, testified that he performed an autopsy on the remains of the decedent in October of 1986, but because of the advanced decomposition of the remains, he found no demonstrative cause of death. However, after further consideration, the pathologist's report was changed, and because of a broken jaw, which he believed had been inflicted near the time of death, he theorized the probability was that the decedent had died as a result of a severe blow to the head.

Near midnight on January 6, 1986, a number of witnesses in the vicinity of the trailer in which the decedent lived heard an argument between the decedent and another person. Some of these people did not

see the other person, while others stated that they saw the decedent arguing with a tall young man. One of these witnesses, Tessie Standriff, stated that her trailer was near the decedent's trailer and that she heard the argument and could identify appellant as the person arguing with the decedent. She stated that she could not identify him by his face but could identify him by his voice.

At trial, she testified that appellant told the victim she was coming home because she was his wife. However, during a pretrial deposition, she had indicated she had not heard such a statement. The evidence shows that Mrs. Standriff was Philippine and had a limited use and understanding of the English language.

Some of the witnesses testified they heard screaming and gunshots that night. Following the decedent's disappearance, appellant told various relatives that she had told him she was taking a trip to Florida. When Roy Heck, Jr. went with appellant to the decedent's trailer, he noticed food still on the stove. He also noticed the trailer was messed up, which was unusual for his mother. The following day, Junior observed one of his mother's suitcases in appellant's home.

A few weeks before the victim's disappearance, appellant had beaten her and was scheduled to go to trial on charges stemming from that incident the week the victim disappeared. When he failed to appear in court, he was arrested. While in jail, he was visited by his daughter, Roberta, and his girlfriend, Shirley Slaughter. He asked them to sprinkle pepper over the site of a sinkhole on his farm (this is the location where the body eventually was found). He also asked them to remove the victim's possessions from his home, including spare purses and a suitcase, before the police searched the house. The women complied with the request the next day. The suitcase contained items of female apparel. The purse contained the victim's drivers license, social security card, make-up, and other such items.

Appellant also requested that the two women telephone the police pretending to be the victim. Shirley attempted to comply with appellant's request. Appellant later told Roberta to keep quiet about her mother's purse and drivers license.

Robert Cuneo testified that he and his father were in the roof repair business and that in times past appellant had permitted them to dump old shingles on his farm. Shortly after the victim's disappearance, appellant contacted the elder Cuneo and asked him to dump some old shingles in the area where the victim's body later was found. He told Cuneo that he wanted the shingles dumped there to cover up the smell of some soured corn. Robert Cuneo testified that the area appeared to have been recently dug out and smoothed over.

In March of 1986, Roberta was in Florida with Eleanor Slaughter, Shirley's mother-in-law, and Shirley's daughter, Shawn Theis. She observed that Eleanor had the victim's ring in her possession with other jewelry to be sold. Eleanor told her that appellant had given her the ring to sell. Appellant later claimed that he had obtained the ring when the victim threw it at him during an argument.

In October of 1986, appellant was served with a warrant to search his farm and in particular the sinkhole site where the victim's remains later were found. Shortly after the warrant was served, appellant left and went to Tennessee. However, he returned shortly and turned himself in to the police.

■ ■■ Appellant claims the evidence is insufficient to support his conviction and couples this with his claim that much of the evidence submitted was inadmissible. Appellant contends the State's evidence fails to disclose the cause, means, manner, place, or time of the victim's death. It is true that none of these facts was established by direct evidence. However, a jury's verdict may be based solely upon circumstantial evidence. *Rowan v. State* (1982), Ind., 431 N.E.2d 805.

In the case at bar, there is ample evidence to support a finding that appellant had a history of battering his wife, including a criminal charge for which he was to

go on trial near the time of her disappearance. There also was evidence that at the time of the victim's disappearance, appellant had stated falsely to others that his wife had gone on a trip. He also removed luggage and personal items from her trailer to his home, then instructed his girlfriend and his daughter to remove those items before police came to the house.

Further, appellant's conviction is supported by the fact that the victim's remains were found buried on appellant's farm, that he caused others to dump old shingles on the site of her burial, and that when police obtained a search warrant to search his farm he left the state. His flight was relevant although appellant did return to Indiana of his own volition and turn himself in to the police. The jury also was entitled to believe that a man fitting appellant's general description was heard engaged in a heated argument with the decedent at her trailer on the evening she disappeared.

Appellant claims the State failed to prove by any credible evidence the cause of the decedent's death. It is true that when the remains were first examined by the pathologist, he stated that due to the state of decomposition he could not state a cause of death. However, upon further consideration, he observed that the presence of a broken jaw, which had occurred at approximately the time of death, could indicate a blow to the head which might have been severe enough to have caused death.

■ This Court has held that the cause of death may be established by circumstantial evidence. *Patterson v. State* (1988), Ind., 532 N.E.2d 604. There is ample circumstantial evidence in this case to support the jury's determination that the victim had met a violent death at the hands of appellant.

Appellant attacks the testimony of State's witness Tessie Standriff, whose trailer was situated near the trailer of the victim. She testified that on the night of the victim's disappearance, she heard the victim having a heated argument with a tall man. She was unable to identify his face, but she said she recognized his voice as appellant's.

■ Appellant points out that during the investigation Standriff came to the police department and asked to hear the voice of appellant on a tape recorder. The police complied with her wish. She verified that the voice was the same voice she had heard on the night of the victim's disappearance. Appellant contends that this constituted an impermissibly suggestive identification of appellant's voice in that Standriff knew she was listening to the voice of appellant at the time she made the identification.

It is true that this Court has held that it is improperly suggestive for police to inform a lineup observer that the suspect is in the lineup. *Chambers v. State* (1981), Ind., 422 N.E.2d 1198; *Young v. State* (1979), 272 Ind. 1, 395 N.E.2d 772. However, this was not a lineup or voice identification instituted by the police officers.

Standriff suspected that the person she had seen and heard was the husband of the victim, and she came to police headquarters knowing that they had tape recordings of appellant's voice and she wanted to assure herself that she was correct in believing the person she had heard was in fact appellant. This certainly does not fall within the framework of a police-engineered lineup or voice identification.

Rather than a thing to be condemned, Standriff's action was a proper and conscientious thing to be condoned. She merely was striving to make sure she had not made an error in the voice identification. We see nothing in this episode to taint her in-court identification of appellant's voice and her statement that the voice was the same voice she had heard on the night of the victim's disappearance.

■ Appellant also contends that Mrs. Standriff's testimony should not be believed because during the early stages of the investigation she had stated that she had not heard the man state that the victim should come home with him because she was his wife. However, at trial she testified that such was the conversation she heard. This inconsistency was fully dis-

closed to the jury. It also was disclosed that Mrs. Standriff was from the Philippines and that she had a very limited understanding and use of the English language. The jury was entitled to determine whether this fact contributed to the apparent inconsistencies in Standriff's statements. *Bane v. State* (1981), Ind., 424 N.E.2d 1000.

■ Appellant claims the judgment is contrary to law due to the highly prejudicial and irrelevant hearsay testimony of certain of the State's witnesses. Twelve different witnesses testified concerning various incidents in which the decedent had displayed bruises and informed other persons that she had been beaten by appellant. In situations such as the case at bar, where the victim on several previous occasions has exhibited physical injuries and has notified observers that the injuries were inflicted by the defendant, such testimony, although hearsay, is admissible to show the defendant's state of mind at the time of those attacks and to demonstrate his motive and the likelihood that he was the perpetrator of the fatal attack upon the decedent. *Drummond v. State* (1984), Ind., 467 N.E.2d 742, citing *Romine v. State* (1983), Ind., 455 N.E.2d 911 and *Moore v. State* (1981), 275 Ind. 39, 414 N.E.2d 558.

Appellant attempts to distinguish this line of cases, stating that although he and the decedent had an on-going relationship, there was no evidence that the deceased died in a manner similar to any of the prior assaults. Thus, he argues, the testimony in addition to being hearsay was irrelevant. We cannot agree with appellant in his evaluation of this evidence. The prior injuries to the victim were claimed by her to be the result of physical beatings from appellant. The evidence in this case, although wholly circumstantial, was that there was a high probability the victim died from a beating of such severe intensity that a broken jaw resulted. Rather than distinguishing the line of cases above cited, such evidence brings the case squarely within the rationale of those cases.

We see no error in the admission of the evidence of prior beatings suffered by the victim at the hands of the appellant.

■ Appellant claims the trial court erred when it allowed Robert Cuneo to testify what his father, Harry Cuneo, had told him regarding appellant's request that they dump shingles at a designated place on his farm. However, this comes under the *Patterson* exception to the hearsay rule that when the declarant is in court and testifies, his prior out-of-court statements may be put in evidence. *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482. Appellant makes the same complaint against the testimony of Mary Cuneo. Her testimony was admissible for the same reason. *Id.*

■ Appellant also contends it was error to admit the testimony of Detective Michael Kreinhop concerning a telephone conversation he had with Donna Brady as to whether the victim had made a trip to Florida at the time of her disappearance. This testimony, however, was not placed in evidence for the purpose of the truth of whether the victim had gone to Florida but for the purpose of showing why the officer's investigation took the turn it did. The evidence was admissible to show the reason for the officer's subsequent action. *Altmeyer v. State* (1988), Ind., 519 N.E.2d 138; *Boyd v. State* (1986), Ind., 494 N.E.2d 284, *cert. denied.* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860; *Stout v. State* (1985), Ind., 479 N.E.2d 563.

■ Appellant claims even if this Court would hold that the testimony of the various individuals was admissible, the sheer number of witnesses who testified to extrajudicial statements rendered them so prejudicial as to require reversal. However, this Court has held that where individual items of evidence do not constitute reversible error, we will not reverse based upon the cumulative effect of that evidence. *See Stonebraker v. State* (1987), Ind., 505 N.E.2d 55; *Hudson v. State* (1986), Ind., 496 N.E.2d 1286. We see no reversible error in the admission of the above evidence.

■■■ Appellant contends the trial court erred in allowing the rebuttal testimony of Roberta Heck. On rebuttal, she testified that she had reported to appellant that she had been raped but that he told her not to report it—that he would "get him (rapist) in his own time." He further stated to her that he was "going to break his (rapist) legs or something." Appellant claims this irrelevant testimony was highly prejudicial to his case. The scope of rebuttal evidence is within the trial court's discretion. *Stewart v. State* (1988), Ind., 531 N.E.2d 1146. Evidence which explains, contradicts, or disproves the adversary's evidence may be competent rebuttal evidence. *Buchanan v. State* (1975), 263 Ind. 360, 332 N.E.2d 213.

In the case at bar, appellant attempted to intimate that someone else, such as his daughter Roberta, had been responsible for the death of the decedent. In pursuing this claim, he presented evidence attempting to show that the relationship between the decedent and Roberta had been turbulent. In his direct testimony, he claimed that Roberta had been involved in an argument and a fight with a man named Luther Thompson, who, he claimed Roberta said, had raped her. He further stated that he had told Roberta to go to the police but that his wife had told her it was her own fault.

In raising such an issue, appellant opened the door for Roberta's rebuttal testimony to state her version of what had happened when she reported the rape to her parents. We see no error in the admission of Roberta's rebuttal testimony.

■■■ Appellant claims the court abused its discretion when, upon learning that the order for separation of witnesses had been violated, it allowed testimony from witnesses who had violated the separation order. Where there has been a violation of a separation order, the trial court, in the absence of connivance or collusion by the party calling the witness, may permit the witness to testify. *Cox v. State* (1981), 275 Ind. 636, 419 N.E.2d 737; *O'Conner v. State* (1980), 272 Ind. 460, 399 N.E.2d 364. The trial court's decision on such a matter will not be reversed absent an abuse of discretion. *Buchanan, supra.*

In the case at bar, appellant makes no claim that the prosecutor in any way connived to have the witnesses violate the separation order. In fact, the prosecutor observed that it was not known that these witnesses, after their initial testimony, would be recalled to the stand and that he only learned of such a necessity after appellant had presented unanticipated evidence which required the rebuttal testimony of the witnesses who had violated the order following their initial testimony. Under the circumstances, we see no reversible error in permitting these witnesses to testify.

■■■ Appellant contends the trial court erred in admitting State's Exhibits Nos. 2, 3, 101, and 105. Appellant acknowledges that the trial court has broad discretion in ruling on the admissibility of evidence and will be reversed only for a clear abuse of discretion. *Jackson v. State* (1986), Ind., 490 N.E.2d 1115. However, he claims that in the case at bar the questioned evidence was inadmissible because its prejudicial impact outweighed its probative value, citing *Rust v. Guinn* (1981), Ind.App., 429 N.E.2d 299. Exhibits 2 and 3 were taped interviews of appellant by the police. Neither tape included a confession. Appellant claims they thus were inadmissible because they were simply hearsay statements made by appellant and neither tape had any logical tendency to prove a material fact.

First, the State correctly observes that there is no hearsay problem in this issue because appellant testified at trial and was subject to examination on the evidence. *See Washburn v. State* (1986), Ind., 499 N.E.2d 264. As to the relevancy of his statements, appellant had filed an alibi notice in which he claimed to have been at the home of his son at the time the murder was believed to have taken place. The statements appellant made in these interviews concerned his whereabouts on the night of the homicide. Evidence is relevant if it tends to prove or disprove any material fact. *See Mengon v. State* (1987), Ind., 505

N.E.2d 788. Under the circumstances, we see no error in admitting State's Exhibits Nos. 2 and 3 into evidence.

■ State's Exhibit No. 101 is a certified copy of a petition for dissolution of the marriage between appellant and the victim. Appellant claims the State introduced the petition for the sole purpose of having the jury see that a restraining order against him was issued from the divorce court. He claims that such evidence is clearly inadmissible because its prejudicial impact outweighs its probative value, citing *Rust, supra*. Appellant claims, without citing authority, that to place before the jury the fact that a restraining order had been issued is improper. However, in the case at bar, there was an abundance of other evidence of prior abuse by appellant against the victim.

Even if we would assume *arguendo* that appellant's contention is correct and that a restraining order should not be placed before the jury, in the case at bar such evidence was merely cumulative and to only a minuscule degree. The evidence of the victim's prior abuse was overwhelming and the addition of the fact that a divorce court had issued a restraining order hardly could be expected to have any significant impact upon the decision of the jury. We see no reversible error in the admission of State's Exhibit No. 101.

■ State's Exhibit No. 105 is a request for an initial hearing stating that appellant was arrested on a bench warrant on a battery charge which was not the subject matter of the case at bar. Again, there was admissible independent evidence that appellant was to come to trial on a charge of assaulting the victim and that he was to appear in court shortly after the time the victim disappeared. The fact that State's Exhibit 105 concerned that charge was merely repetitious of what the jury already had before it.

During cross-examination of Detective Kreinhop, appellant questioned him as to how many charges had been filed and questioned the delay in filing the charges. The State's presentation of its Exhibit 105 was a response by the prosecutor to explain the delay in filing the instant charge. It was entirely proper for the State to present evidence to explain the questions raised by the cross-examination of Detective Kreinhop. *Starks v. State* (1987), Ind., 517 N.E.2d 46; *Kalady v. State* (1984), Ind., 462 N.E.2d 1299. We see no reversible error in the admission of State's Exhibit No. 105.

■ Appellant contends the trial court erred when it allowed the testimony of Officer Kreinhop regarding a telephone conversation and his actions after he heard the conversation. The officer testified to overhearing a conversation between appellant and his girlfriend, Shirley Slaughter. Appellant is apparently arguing that eavesdropping upon his conversation violated his Fourth Amendment rights and that any evidence and investigation resulting from the overhearing of the conversation should be suppressed.

At trial, however, appellant's objection was not based upon this Fourth Amendment claim. His objection at trial was that there was a discovery violation, both because he had not been apprised of any statement of his own made in the telephone conversation and because any statement by Shirley Slaughter was hearsay. We further would observe that the trial court sustained appellant's objection to the content of the conversation overheard by Detective Kreinhop. Testimony as to what the officer did after he heard the telephone conversation has been held to be proper evidence. *See Hester v. State* (1987), Ind., 512 N.E.2d 1110; *Boyd, supra*. We see no reversible error in permitting the officer to testify as to what avenue of investigation he pursued after hearing the telephone conversation.

The trial court is affirmed.

SHEPARD, C.J. and PIVARNIK, J., concur.

DeBRULER, J., dissents with separate opinion.

DICKSON, J., concurs in result without separate opinion.

**454**

DeBRULER, Justice, dissenting.

The same safeguards should be employed by the police forces in voice identification procedures as are employed in seeking visual or photographic identifications. *Matthews v. State* (1988), Ind., 518 N.E.2d 807. The admissibility of the products of such procedures is to be determined upon application of a two-pronged test, the first prong of which is the determination from a totality of the circumstances of whether the procedures are unduly and unnecessarily suggestive, and the second prong of which is whether, if so unduly and unnecessarily suggestive, there was created a substantial likelihood of irreparable misidentification. *Norris v. State* (1976), 265 Ind. 508, 356 N.E.2d 204. If a process fails the test and produces a tainted out-of-court identification by a witness, such witness may nevertheless make an in-court identification if that in-court identification does not depend upon the pre-trial one, but has an independent origin. *Id.*

Here, there is no evidence that the witness Standriff was previously acquainted with appellant's voice or that of the unidentified assailant before the night of the victim's disappearance. Her identification was very uncertain up to the point in time, one week before the trial, when she visited the police station. The voice which she did hear uttered only a few words. American English was not the mother tongue of the witness. She was from the Phillipines. She was not a victim, with attention fixed upon one who was attacking her, but simply a neighbor overhearing a neighborhood brouhaha. When, therefore, she came to the police station and asked to hear the suspect's recorded voice, and the police had such a recording, they were under a duty, the same as if the idea had been theirs, to present her with a fair voice identification array or lineup. *Matthews*, 518 N.E.2d 807. Under the totality of these circumstances, their failure to employ such a fair procedure created a very substantial likelihood of irreparable misidentification. The same set of circumstances indicate that there was no independant origin for her in-trial identification from a similar tape of appellant's voice. It was therefore consti-

tutionally inadmissible. I would reverse and remand for a new trial at which such identification testimony would be excluded.