Marlin HADDOCK, Plaintiff

v.

Dean C. CHRISTOS, et al., Defendants.

No. 4:CV–93–1382.

United States District Court,
M.D. Pennsylvania.

Oct. 4, 1994.

G. Scott Gardner, Williamsport, PA, for plaintiff.

Michael L. Harvey, Office of Atty. Gen., Harrisburg, PA, for defendants.

### *MEMORANDUM*

McCLURE, District Judge.

## BACKGROUND

Plaintiff Marlin Haddock alleges in this section 1983 action [1] that three of the defendants maliciously and unjustifiably arrested and prosecuted him on narcotics charges in violation of his Fourth, Sixth, Eighth and Fourteenth Amendment rights. He further alleges that, while incarcerated, he was severely beaten by the two remaining defendants, state corrections officers, in violation of plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment as applied to the states through the Fourteen Amendment.

State criminal charges were filed against plaintiff in Northumberland County, Pennsylvania on February 29, 1989.[2] Plaintiff was charged with possession with intent to deliver a controlled substance (meprobamate), delivery of a controlled substance (meprobamate), criminal conspiracy (Northumberland County Crim. No. C–52–89); and unlawful sale of a look-alike drug (ampicillin) and unlawful delivery of a look-alike drug (ampicillin) (Northumberland County Crim. No. C–53–89).

Following his arrest, plaintiff was incarcerated in the Northumberland County Prison in Sunbury, Pennsylvania for approximately five days. Plaintiff posted bail and was released from custody on March 5, 1989.

Following a jury trial which concluded on September 25, 1990, plaintiff was convicted of all charges. Post-verdict motions were denied by the Court of Common Pleas of Northumberland County on July 9, 1991. Plaintiff was sentenced on August 29, 1991 to an aggregate term of incarceration in a state correctional institution of 18 to 72 months. Plaintiff began serving his sentence at the State Correctional Institution at Camp Hill, Pennsylvania (SCI–Camp Hill).

Plaintiff appealed his conviction to the Pennsylvania Superior Court. On July 8, 1992, the Superior Court reversed plaintiff's conviction and directed that he be granted a new trial.[3] A petition for allocatur filed with the Pennsylvania Supreme Court was de-

1.  42 U.S.C. § 1983.

2.  See p. 173 *infra*.

3.  Plaintiff's conviction was reversed, and he was awarded a new trial on the ground that the trial court judge erred in precluding him from cross-examining the prosecuting police officer (Chris-

tos) and the Commonwealth's informant (Philbin) about other drug prosecutions initiated by that pair which had failed. *Commonwealth v. Haddock,* 415 Pa.Super. 603, 609 A.2d 1387 (1992). The Superior Court further held that it was prejudicial error not to admit evidence as to the actual ownership of a vehicle which figured in the case.

nied.[4] Plaintiff was released on bail on July 16, 1992 pending re-trial. On July 19, 1993, the Commonwealth *nol prossed* all charges against him. All pending charges were dismissed with prejudice.

Plaintiff subsequently filed this action in 1993 challenging the constitutionality of his arrest and prosecution on state narcotics charges and alleging, further that he received a severe beating by corrections officers while incarcerated. Named as defendants are Dean C. Christos, an agent for the Pennsylvania Bureau of Narcotics Investigation; the Pennsylvania Department of Corrections; Richard Higgins, an agent of Coal Township, Pennsylvania; Coal Township; Sergeant Sutton and Officer Harmon, both of the Pennsylvania Department of Corrections.[5]

Plaintiff's complaint contains two counts: Count I alleges a cause of action against defendants Christos, Higgins and Coal Township for the violation of plaintiff's civil rights in bringing about his arrest and unlawful conviction. Count II alleges a cause of action against the Pennsylvania Department of Corrections and defendants Sutton and Harmon for the violation of plaintiff's Eighth and Fourteenth Amendment rights against cruel and unusual punishment arising from the alleged beating plaintiff suffered while incarcerated at SCI–Camp Hill.[6]

Plaintiff alleges that defendants brought about his arrest and prosecution by the use of false statements, the fabrication of evidence, knowing that probable cause for his arrest was lacking. He alleges that defendants knowingly acted with deliberate indifference to his rights. Plaintiff alleges that defendants used a confidential informant, Daryl Philbin, to fabricate evidence against him and to make false statements implicating him in criminal acts.

Plaintiff also alleges that during his incarceration at SCI–Camp Hill, he was severely beaten by corrections officers Harmon and Sutton.

Plaintiff seeks compensatory and punitive damages for defendants' conduct. He alleges that due to defendants' conduct he lost his restaurant business.

Defendants Coal Township and Richard Higgins filed an answer to plaintiff's complaint on October 20, 1993. Defendants Christos, Sutton and Harmon answered the complaint on October 26, 1993.

Defendants Christos, Higgins, and Coal Township move for partial judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).[7] Defendants seek judgment in their favor on Count I of plaintiff's complaint on the ground that plaintiff's claim for false arrest is time-barred and that plaintiff has failed to plead, and cannot plead, the elements necessary to establish a Fourth Amendment claim under section 1983.[8]

For the reasons which follow, we will enter an order: 1) granting defendants' motion as to plaintiff's claim for false arrest; 2) denying defendants' motion as to plaintiff's Fourth Amendment claim asserted under section 1983; and 3) granting defendants' motion as to plaintiff's Eighth Amendment and equal protection claims asserted in Count I.

## DISCUSSION

### Motion for judgment on the pleadings

■ A motion for judgment on the pleadings pursuant to Rule 12(c), is governed by

---

4. *Commonwealth v. Haddock,*. 533 Pa. 630, 621 A.2d 578 (1993).

5. The Commonwealth of Pennsylvania and Pennsylvania Bureau of Narcotics Investigation were dismissed as party defendants by this court's order dated November 10, 1993 (record document no. 11), entered pursuant to defendants' motion to dismiss (record document no. 5).

6. No state tort claims are alleged.

7. Record document no. 18.

8. Under the present state of constitutional law, the constitutional basis for such a claim is somewhat unclear, as is its proper nomenclature. See: *Heck v. Humphrey,* —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) and the discussion on the same at pp. 174–76 *infra.* .

Based on the Court's discussion in *Heck, supra* and *Albright v. Oliver,* —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), the most accurate description of the cause of action asserted here is a "Fourth Amendment" claim, and that is how we will refer to it in this memorandum.

the same standard as a Rule 12(b)(6) motion. *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). In deciding defendant's motion, we are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir.1994). "In determining whether a claim should be dismissed under Rule 12(b)(6)," we look "only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Id.* Dismissal is not appropriate unless "it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations." *Id.*

## MOTION FOR JUDGMENT ON PLAINTIFF'S FALSE ARREST CLAIM

■ Defendants Christos, Higgins and Coal Township move for judgment on the pleadings on plaintiff's false arrest claim asserted in Count I on the ground that plaintiff's claim is barred by Pennsylvania's two year statute of limitations. As defendants correctly point out, under the law of this circuit, a claim for false arrest accrues on the date of the arrest under the rationale that the plaintiff knew or had reason to know of the violation of his civil rights as of that date. *Rose v. Bartle,* 871 F.2d 331, 350–51 (3d Cir.1989) and *Dreary v. Three Un–Named Police Officers,* 746 F.2d 185, 197 n. 16 (3d Cir.1984).

■ Although the state statute of limitations for tort actions determines the length of the limitations period, federal law governs the accrual date. *Lafont–Rivera v. Soler–Zapata,* 984 F.2d 1, 3 (1st Cir.1993). Here,

Pennsylvania's two year statute of limitations governs. *Smith v. City of Pittsburgh,* 764 F.2d 188, 194 (3d Cir.1985), *cert. denied,* 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985) and 42 Pa.Cons.Stat.Ann. § 5524.

Plaintiff alleges that he was arrested on February 29, 1989. Defendants state, in their supporting brief, that this was impossible as a practical matter, since 1989 was not a leap year and ask that the court take judicial notice of the fact that plaintiff was arrested on February 27, 1989, not February 29, 1989, as averred.

Whether we consider the date of the arrest to be the date alleged by plaintiff or the date recited by defendants is of no consequence. Whichever date is correct, it is clear that plaintiff's cause of action accrued more than two years before this action was filed. His claim for false arrest is, therefore, time-barred and will be dismissed on that basis.

## MOTION FOR JUDGMENT ON PLAINTIFF'S FOURTH AMENDMENT CLAIM

### Defendants' arguments

■ Plaintiff asserts in Count I a Fourth Amendment claim under section 1983. Defendants seek to dismiss plaintiff's claim on the ground that he fails to plead, and cannot plead under the facts, the essential elements of that claim. In this circuit, proof that the underlying proceedings were brought without probable cause is an essential element of a plaintiff's claim.[9] See: *Payson v. Ryan,* 1992 WL 111341, 1992 U.S.Dist. LEXIS 6790, slip op. at 26) (E.D.Pa. May 14, 1992) (Van Antwerpen, J.)

Defendants contend that plaintiff's conviction following a trial by jury "establishes as a matter of law that the moving defendants had probable cause to arrest and charge

---

9. The four elements which a plaintiff in Haddock's position must allege and prove are: 1) that the defendant initiated criminal proceedings against him; 2) that the defendant initiated such proceedings without probable cause or in reckless disregard of the truth or falsity of the statements made in an affidavit of probable cause; 3) that the defendant acted with actual malice or for a purpose other than bringing the plaintiff to justice; and 4) that the underlying proceedings terminated in plaintiff's favor. Adapted from *Heck v. Humphrey,* — U.S. —, 114 S.Ct. 2364,

129 L.Ed.2d 383 (1994); *Lippay v. Christos,* 996 F.2d 1490, 1502 (3d Cir.1993); *Forster v. County of Santa Barbara,* 896 F.2d 1146, 1148 (9th Cir. 1990); and *Lee v. Mihalich,* 847 F.2d 66, 69–70 (3d Cir.1988).

Presumably the elements identified by the Third Circuit pre–1994 (See: *Lee, supra.*) survive the United States Supreme Court's 1994 decisions in *Heck, supra,* and *Albright v. Oliver,* — U.S. —, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) to the extent not inconsistent with the Court's rulings in those cases.

plaintiff with various criminal acts." (Record document no. 19 at p. 7.) They assert that the conviction "alone establishes the existence of probable cause" and demonstrates that the plaintiff cannot establish lack of probable cause. *Id.*

In support of their argument, defendants cite federal and state law precedent which held that a finding of probable cause in the underlying proceeding estops the defendant from challenging that finding later in a civil action for malicious prosecution despite subsequent reversal or dismissal of the criminal charges. It is their contention that "Plaintiff's conviction conclusively establishes the existence of probable cause even though it has been reversed on appeal." (Record document no. 19, p. 7).

Defendants cite, as support for that contention: *Crescent City Live Stock Co. v. Butcher's Union Slaughter House Co.,* 120 U.S. 141, 150–51, 7 S.Ct. 472, 476–77, 30 L.Ed. 614 (1886); *Payson, supra,* slip op. at 12 (District Justice's determination that probable cause existed precluded criminal defendant from challenging his prosecution in a civil rights action); *Martinez v. Korvette,* 335 F.Supp. 886, 887 (E.D.Pa.1971); and *Lynn v. Smith,* 193 F.Supp. 887, 890 (E.D.Pa.1961). See also: *Bussard v. Neil,* 616 F.Supp. 854, 857 (M.D.Pa.1985) (collecting cases). Cf. *Williams v. City of New York,* 508 F.2d 356 (2d Cir.1974) (prior conviction constitutes *prima facie,* but not conclusive, evidence of probable cause).

In *Payson, supra,* Judge Van Antwerpen of the District Court for the Eastern District of Pennsylvania held that "the independent judgment of a neutral magistrate in Payson's preliminary hearing that the Commonwealth had made out a prima facie case" supported a finding as a matter of law that probable cause existed for the filing of the underlying state charges. Citing *Coogan v. City of Wixom,* 820 F.2d 170, 174 (6th Cir.1987) for the proposition that "a plaintiff is collaterally estopped from denying that there was probable cause to believe he committed a crime when, after he had a full and fair opportunity to litigate the issue in an earlier state court proceeding, a judge found probable cause to bind him over for trial." *Id.* at 29.

Looking to Pennsylvania law for principles of collateral estoppel, Judge Van Antwerpen concluded that those principles precluded Payson from challenging the Pennsylvania magistrate's finding of probable cause in a federal civil rights action. "Where a neutral magistrate makes a final and appealable determination of probable cause after a full evidentiary hearing where the accused was represented by counsel and had the opportunity to present evidence, and did in fact present evidence and oral argument, that defendant must be precluded from relitigating the issue in a § 1983 civil rights action." *Id.* at 12.

Defendants argue that, under this line of authority, plaintiff can prevail on his claim only if he can establish that his conviction was brought about by fraud, perjury or corrupt means. (Record document no. 19, p. 8, citing *Restatement (Second) of Torts,* § 667 (1977) ("The conviction of the accused by a magistrate or trial court although reversed by an appellate tribunal, conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or corrupt means.").

Citing *Crescent City, supra,* 120 U.S. at 150–51, 7 S.Ct. at 476–77, defendants contend that fraud has not been pled. Although plaintiff alleges that his state court conviction was brought about "via the issuance of false statements under oath, the fabrication of evidence ... and illegal acts done with deliberate indifference to the rights of the Plaintiff," (Plaintiff's complaint, ¶ 29) and that "[d]efendants employed a confidential informant, one Daryl Philbin, a known criminal and admitted drug trafficor (sic), to fabricate evidence against the Plaintiff, make false statements under oath and otherwise falsely implicate the Plaintiff for the purposes of obtaining a conviction against Plaintiff," (Plaintiff's complaint, ¶ 35A), defendants contend that these allegations are unsubstantiated by any allegations of specific underlying facts, and therefore, fail to satisfy the requirement that allegations of fraud be pled with specificity. (Record document no. 19, p. 10).

### Plaintiff's response

Plaintiff responds to these arguments by contending that the Pennsylvania decisions to

which defendants look for authority are no longer Pennsylvania law. He contends that a 1986 Pennsylvania Superior Court decision, *Cap v. K–Mart,* 357 Pa.Super. 9, 515 A.2d 52 (1986), signalled a reversal of prior Pennsylvania case law relied upon by defendants. In *Cap v. K–Mart, supra,* the Pennsylvania Superior Court ruled, without analysis or explanation, that an initial finding of probable cause does not preclude a subsequent challenge to the conviction.

Plaintiff also cites, as persuasive authority, federal decisions from other circuits which reject defendants' position. See, e.g., *Smith v. Springer,* 859 F.2d 31 (7th Cir.1988); *Dukes v. New York,* 743 F.Supp. 1037 (S.D.N.Y.1990); and *Unger v. Cohen,* 718 F.Supp. 185, 187 (S.D.N.Y.1989).

**Heck v. Humphrey**

Both parties' arguments raise the question of what is the proper source of authority for determining civil rights law governing challenges to a state criminal conviction. That was the issue which divided the United States Supreme Court in *Heck v. Humphrey,* — U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The Court's ultimate holding in that case is less important to our discussion than the justices' analysis.

Section 1983 plaintiff Roy Heck was convicted of voluntary manslaughter in the Court of Common Pleas of Dearborn County, Indiana. He appealed his conviction. While his state court appeal was pending, he filed a section 1983 action in federal court against the Dearborn County prosecutors and Indiana State Police investigator alleging that they had, *inter alia,* " 'knowingly destroyed' evidence ... 'exculpatory in nature' and caused 'an illegal and unlawful voice identification procedure' to be used at ... [his] trial." *Id.* at ——, 114 S.Ct. at 2368, 129 L.Ed.2d at 389. Heck sought compensatory and punitive damages for defendants' alleged violation of his federal constitutional rights.

The District Court dismissed Heck's action without prejudice on the ground that he had first to exhaust state remedies, since his claims "directly implicate[d] the legality of [his] confinement. *Id.* at ——, 114 S.Ct. at ——, 129 L.Ed.2d at 390. Heck appealed the dismissal to the United States Court of Appeals for the Seventh Circuit.

While his appeal was pending, the Indiana Supreme Court upheld his conviction and sentence on direct appeal. *Id.* at ——, 114 S.Ct. at 2369, 129 L.Ed.2d at 390, citing *Heck v. State,* 552 N.E.2d 446, 449 (Ind.1990). Heck then filed two habeas petitions in the federal courts. The first was dismissed because it contained unexhausted claims. The second was denied. The denial was affirmed by the Seventh Circuit on appeal. *Id.* —— U.S. at ——, 114 S.Ct. at 2369, 129 L.Ed.2d at 390.

When Heck's appeal from his section 1983 dismissal reached the Seventh Circuit, it "affirmed the judgment and approved the reasoning of the District Court." *Id.* at ——, 114 S.Ct. at 2368, 129 L.Ed.2d at 390. Heck filed a petition for certiorari, which the Supreme Court granted.

In a five to four decision, the Supreme Court affirmed the Seventh Circuit. The court was divided, not on the ultimate result—all nine justices agreed that Heck's action should be dismissed pending a reversal of his conviction in state court—but in their analysis.

Justice Scalia delivered the opinion of the Court, in which Chief Justice Rehnquist, and Justices Kennedy, Thomas [10] and Ginsburg joined. The starting point for the majority's analysis was the common law cause of action for malicious prosecution. Justice Scalia, writing for the Court stated:

'We have repeatedly noted that 42 USC § 1983 ... creates a species of tort liability.' ... [The rules governing common law tort actions] ... provide the appropriate starting point for the inquiry under § 1983 ... Thus, to determine whether there is any bar to the present suit, we look first to the common law of torts....

The common-law cause of action for malicious prosecution provides the closest analogy to claims of the type considered here because, unlike the related cause of action for false arrest or imprisonment, it

---

**10.** Justice Thomas also filed a separate concurring opinion.

permits damages for confinement imposed pursuant to legal process.

*Id.* at ——, 114 S.Ct. at 2371, 129 L.Ed.2d at 392.

Joined by Justices O'Connor, Blackmun, and Stevens, Justice Souter wrote separately to express his disagreement with what he regarded as the majority's unconsidered incorporation of common law principles into section 1983. While agreeing that "[c]ommon law tort principles can provide a 'starting point for the inquiry under § 1983,'" *Id.* at ——, 114 S.Ct. at 2375, 129 L.Ed.2d at 397, Justice Souter stated that resort to common law principles must be tempered by "statutory analysis" to ensure that the principles incorporated are consistent with the "history" and "purpose" of section 1983. *Id.* at ——, 114 S.Ct. at 2375–76, 129 L.Ed.2d at 398. In his opinion the Court has, in the past:

> relied on the common law in § 1983 cases only when doing so was thought to be consistent with ordinary rules of statutory construction, as when common-law principles have textual support in other provisions of the Civil Rights Act of 1871, [citing, as an example, *Carey v. Piphus,* 435 U.S. 247, 255–56 [98 S.Ct. 1042, 1047–48, 55 L.Ed.2d 252 (1978)] (damages under § 1983), or when those principles were so fundamental and widely understood at the time § 1983 was enacted that the 42d Congress could not be presumed to have abrogated them silently, see, e.g. *Tenney v. Brandhove,* 341 U.S. 367, 376 [71 S.Ct. 783, 788, 95 L.Ed. 1019] (1951) (immunity under § 1983); *Pierson v. Ray,* 386 U.S. 547, 553–54 [87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288] (1967) (same). At the same time, we have consistently refused to allow common-law analogies to displace statutory analysis, declining to import even well-settled common law rules into § 1983 'if [the statute's] history or purpose counsel against applying [such rules] in § 1983 actions.' *Wyatt v. Cole* [—— U.S. ——, 112 S.Ct. 1827] 118 L.Ed.2d 504 (1992); see also *Tower v. Glover,* 467 U.S. 914, 920–921 [104 S.Ct. 2820, 2824–2825, 81 L.Ed.2d 758] (1984). Cf. *Anderson v. Creighton,* 483 U.S. 635, 645 [107 S.Ct. 3034, 3042, 97

L.Ed.2d 523] (1987) ('[W]e have never suggested that the precise contours of official immunity [under § 1983] can and should be slavishly derived from the often arcane rules of the common law').

*Id.* —— U.S. at ——, 114 S.Ct. at 2375, 129 L.Ed.2d at 398 (Footnote omitted.).

If this approach is abandoned, Justice Souter stated, the courts will be required "to accept as elements of the § 1983 cause of action not only the malicious-prosecution tort's favorable termination requirement, but other elements of the tort that cannot coherently be transplanted." *Id.* at ——, 114 S.Ct. at 2376, 129 L.Ed.2d at 398–99. The example which he chose to support his analysis was the issue of probable cause. Proof that probable cause to initiate criminal charges was lacking is one of the essential elements of a malicious prosecution claim under federal or state law. *Id.* at ——, 114 S.Ct. at 2376–77, 129 L.Ed.2d at 399. Justice Souter stated:

> ... [T]he Court overlooks a significant historical incongruity that calls into question the utility of the analogy to the *tort of malicious prosecution* insofar as it is used exclusively to determine the scope of § 1983 ... [D]amages for unlawful conviction or postconviction confinement ... were not available at all in an action for malicious prosecution at the time of § 1983's enactment.

*Id.* at ——, 114 S.Ct. at 2377, 129 L.Ed.2d at 400. This was so, Justice Souter stated, because under Reconstruction-era common law, a conviction was regarded as irrefutable evidence that probable cause was *not* lacking. *Id.* at ——, 114 S.Ct. at 2377, 129 L.Ed.2d at 400, citing T. Cooley, *Law of Torts,* 185 (1879) ("If the defendant is convicted in the first instance and appeals, and is acquitted in the appellate court, the conviction below is conclusive of probable cause.")

Adhering to that standard, Justice Souter stated, would necessarily result in a ruling that the "conviction of a crime wipes out a person's § 1983 claim for damages for unconstitutional conviction or postconviction confinement." *Id.* at ——, 114 S.Ct. at 2377, 129 L.Ed.2d at 400. No other result is reconcilable with Reconstruction-era law. This result,

Justice Souter pointed out, highlights the incongruity of the analysis followed by the majority:

> [R]elying on the tort of malicious prosecution to dictate the outcome of this case would logically drive one to the position, untenable as a matter of statutory interpretation (*and, to be clear, disclaimed by the Court*), that conviction of a crime wipes out a person's § 1983 claim for damages for unconstitutional conviction or postconviction confinement.

*Id.* at ——, 114 S.Ct. at 2377, 129 L.Ed.2d at 400 (Emphasis supplied).

■ Thus, to return to our issue, as Justice Souter indicates, Justice Scalia's majority opinion in *Heck, supra,* by implication, if not directly, contravenes defendants' argument that an initial finding of probable cause abrogates the right to bring a Fourth Amendment claim. Justice Scalia's exposition of the elements of the claim resolves the issue. He states that a prisoner must show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at ——, 114 S.Ct. at 2372, 129 L.Ed.2d at 394. This statement has meaning only if the initial conviction or finding of probable cause does not bar a subsequent action challenging that conviction.

### Plaintiff's allegations

■ Haddock alleges that he was convicted in state court; that his conviction was reversed on appeal and he was granted a new trial; and that he was not re-tried because the Commonwealth voluntarily nol prossed all charges against him and dismissed the same with prejudice. (Plaintiff's complaint, ¶ 28).

■ Plaintiff's allegations are sufficient to establish a Fourth Amendment claim at this stage.[11] We will, on that basis, deny defendants' motion to dismiss.

■ Under the Supreme Court's ruling in *Albright v. Oliver,* —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), of course, only the claim grounded in the Fourth Amendment, as applied to the states through the Fourteenth Amendment, survives. To the extent plaintiff is alleging a constitutional claim based on rights allegedly conferred by the Substantive Due Process Clause of the Fourteenth Amendment, that claim cannot survive the Court's ruling in *Albright, supra.*

### Eighth Amendment and Equal Protection Claims

■ Plaintiff asserts under Count I, in addition to the Fourth Amendment claim discussed above, claims purportedly grounded in the Eighth Amendment and in the Equal Protection Clause of the Fourteenth Amendment. There is no conceivable basis, under the facts pled, for a claim rooted in either against the defendants sued in Count I. Plaintiff was not yet incarcerated, let alone convicted, when the events which form the basis for Count I occurred. The Eighth Amendment, therefore, does not apply. Nor do the allegations of that count, i.e. arrest without probable cause, have any conceivable connection to the freedoms guaranteed by the Equal Protection Clause of the Fourteenth Amendment.

\*　　\*　　\*　　\*　　\*　　\*

---

11. Even if, as defendants argue, plaintiff were required to establish fraud or duplicity in the filing of the charges, those elements have been pled. Plaintiff alleges that:

> 29. The initiation of the criminal prosecution against Plaintiff ... by Defendants ..., the arrest of Plaintiff and the pursuit of prosecution by said Defendants via the issuance of false statements under oath, the fabrication of evidence and the utter lack of probable cause for said prosecution were knowing, intentional, willful, malicious, fraudulent and illegal acts done with deliberate indifference to the rights of the Plaintiff.
> ....
> 35 ...
> A. Defendants employed a confidential informant, one DARYL PHILBIN, a known criminal and admitted drug trafficor (sic), to fabricate evidence against the Plaintiff, make false statements under oath and otherwise falsely implicate the Plaintiff for the purposes of obtaining a conviction against Plaintiff.

(Plaintiff's complaint, ¶¶ 29 and 35A.)