## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 10 2018, 7:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Christina Miller
Andrew P. Martin
Kristin Valdivia
Sachs & Hess, PC
St. John, Indiana

ATTORNEY FOR APPELLEE

Amy Noe Dudas
Richmond, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Paternity of E.M.S.,

Angela Marie Goodson,

*Appellant-Respondent,*

v.

Jason Wyatt Schmittler,

*Appellee-Petitioner.*

July 10, 2018

Court of Appeals Case No. 18A-JP-403

Appeal from the Wayne Circuit Court

The Honorable David A. Kolger, Judge

Trial Court Cause No. 89C01-1608-JP-112

**Bradford, Judge.**

# Case Summary

Angela Goodson ("Mother") and Jason Schmittler ("Father") are the parents of E.M.S. ("the Child"). On January 19, 2018, the juvenile court awarded full legal and physical custody of the Child to Father. Mother challenges the custody determination on appeal, arguing that the juvenile court abused its discretion by excluding the testimony of certain character witnesses. We affirm.

# Facts and Procedural History

Father and Mother began dating in February of 2014. They are the parents of the Child, who was born on December 24, 2014. Although they never lived together, after the Child's birth, Mother and Father spent frequent time together with the Child. At some point, however, Mother's and Father's relationship failed.

On August 24, 2016, Father filed a petition to adjudicate paternity and for a determination regarding custody and child support. According to the terms of a provisional order entered by the juvenile court, Mother and Father began sharing provisional physical custody of the Child in February of 2017. The juvenile court conducted a two-day evidentiary hearing on Father's petition on December 4, 2017 and January 18, 2018. At the beginning of the evidentiary hearing, Father's counsel moved for a separation of witnesses. The juvenile

court granted Father's motion and instructed counsel "to advise their clients and witnesses accordingly." Tr. Vol. II, p. 4.

[4] During the cross-examination of Kim Syler, a witness for Mother, it came to the juvenile court's attention that some of Mother's witnesses had engaged in numerous conversations regarding the case while they waited together in a hallway outside the courtroom. Specifically, Syler indicated that she had overheard Mother's parents discussing certain aspects of the case. The juvenile court decided "to bring [the witnesses] in one by one and find out if they've talked to each other about the case." Tr. Vol. II, pp. 207–08. When asked "[h]ow many times, if any, was the case discussed … while [the witnesses] were waiting to testify," Racine Kovach stated "I would say numerous. I can't really put a number." Tr. Vol. II, p. 209. Likewise, Sarah Otte testified that she participated in conversations regarding the case with Syler, Mother's parents, Kovach, and John Minear.

[5] After learning of these conversations, Father moved to strike the testimony of Minear and Syler and to preclude Otte, Mother's parents, and Kovach from testifying. Finding that the conversations at issue violated the separation order, the juvenile court granted Father's motion. Afterwards, the following exchange occurred:

> THE COURT: … The Court granted Father's motion … and it's my understanding, [Mother's Counsel], I'm not trying to devalue or belittle what they were going to say, but they were - they were going to basically be character witnesses, is that correct?

[MOTHER'S COUNSEL]:  Character witnesses, also they would also have some - some testimony regarding … the relationship between the parties.

**\*\*\*\***

THE COURT:  Okay.…  I'm not really interested in hearing character witness testimony from people who were sitting out in the hall talking about character witness testimony all morning, but if one of them would say something that was directly, like, had witnessed a violent act or something like that and they were going to say something like that, that would be different in my mind, … if somebody was a witness to an act that's a make or break type situation, I might want to hear that, but that's not what I'm going to hear, is that a fair statement?

[MOTHER'S COUNSEL]:  I don't - I don't think that's what you were going to hear, Your Honor.

Tr. Vol. III, pp. 3–4.

[6]     At the close of Father's evidence, Mother requested that the juvenile court reconsider its prior ruling as it applied to her parents.  With regard to Mother's request, the following exchange occurred:

THE COURT:  Okay.  Father moved for the separation at the very beginning of the first day of this trial.…  I advised both lawyers to advise their clients and their witnesses that there was a separation order in place so that they wouldn't violate it and you didn't do it, correct, [Mother's Counsel]?

[MOTHER'S COUNSEL]:  I advised - I advised the parties –

**\*\*\*\***

THE COURT: And unfortunately for everybody they apparently didn't heed your advice, correct?

[MOTHER'S COUNSEL]: That's what we heard.

THE COURT: Well, we heard that they sat out there for hours and discussed their testimony - their upcoming testimony among themselves.

[MOTHER'S COUNSEL]: Yes, Your Honor.

THE COURT: Which was in clear violation of this Court's order, that's why I struck the testimony … and told you that you couldn't call them. So I just want the record to reflect that … they clearly violated a court order so … why would I back up and let them testify now?

[MOTHER'S COUNSEL]: Your Honor, the - the parents would … be testifying simply about what they witnessed during the course of this relationship when [Father] has testified that he was in their home, he spent time with them, so it - it - it would be entirely - entirely distinct from anything that any of those other witnesses would have had to discuss.

THE COURT: So if they acknowledge on the stand that they discussed any of the things that they're testifying about, I can strike that or - or if I feel like I can strike it all - you see where I'm coming from? I don't know how you can make the statement you just made without … knowing what they're going to say. [Father's Counsel], what's - what's your position?

[FATHER'S COUNSEL]: Your Honor, we heard testimony from Kim Syler, who is a friend of Mother's, and whose children have played with [the Child] and during her cross examination, she just threw out there that, you know, she had heard about something from [Mother's] parents while she was sitting out in the hallway which started this whole conversation. She then acknowledged on the record that she was engaged in a long conversation with both [of Mother's parents]. We then brought in Racine Kovach, who testified that they had all been seated together to include [Mother's parents] and the question was specifically asked how many time[s], if any, was the case discussed among all of them while waiting to testify and the answer was numerous. And - and at that point, you struck a prior witness, Mr. Minear, who had been sitting with them, you struck Kim Syler's testimony, you struck Racine Kovach, Sarah Otte and [Mother's parents] and I don't see how we can possibly know whether or not [Mother's parents] will be truthful about whether or not they discussed X, Y or Z when they're in here today and … I think the Court order meant what it meant and the order striking those witnesses should - should remain.

THE COURT: Yeah. How do I put the [genie] back in the bottle, [Mother's Counsel]? How do I know they're not violating the order every time they speak?

[MOTHER'S COUNSEL]: Your Honor, I - I don't know that the Court can know that. Again, all I can - all I can proffer to the Court is that they would have unique knowledge of facts in this case that none of the other witnesses would have had and it would be a relatively short, limited examination.… I was not out there, so I don't know what was discussed, Your Honor.

Tr. Vol. III, pp. 89–93. Following this exchange, the juvenile court rejected Mother's request to amend its prior ruling. On January 19, 2018, the juvenile awarded full legal and physical custody of the Child to Father.

# Discussion and Decision

[7] Mother contends that the trial court abused its discretion by striking the testimony of Syler and Minear and excluding the testimony of Otte, Kovach, and her parents. Indiana Evidence Rule 615 provides that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." "The primary purpose of a separation of witnesses order is to prevent them from gaining knowledge from the testimony of other witnesses and adjusting their testimony accordingly." *Roser v. Silvers*, 698 N.E.2d 860, 865 (Ind. Ct. App. 1998).

> The determination of the remedy for any violation of a separation order is wholly within the discretion of the trial court. Even when it is confronted with a clear violation, the trial court may choose to allow the violating witness to testify at trial. We will not disturb a trial court's decision on such matters absent a showing of a clear abuse of discretion.

*Jordan v. State*, 656 N.E.2d 816, 818 (Ind. 1995) (internal citations omitted). An abuse of discretion "occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or when the court errs on a matter of law." *Cmty. Health Network v. Bails*, 53 N.E.3d 450, 453 (Ind. Ct. App. 2016).

[8]     In this case, the witnesses at issue, all of whom intended to provide testimony relating to Mother's character, engaged in numerous discussions about the case, Mother's character, and their future testimony while waiting together outside of the court room. In doing so, the witnesses disregarded the juvenile court's instruction not to discuss anything relating to the testimony they planned to give with any other witness. Mother's counsel indicated that he had informed each of the witnesses of the juvenile court's order, leading one to assume that their violations were both knowing and deliberate.

[9]     We are unconvinced by Mother's somewhat perplexing assertion that there was no violation of the juvenile court's order because the conversations at issue were focused on the witnesses' upcoming testimony rather than testimony they had already given before the court.[1] The witnesses knew that they were going to be called to testify on Mother's behalf and that they had been instructed not to discuss their testimony, future or previously given, with any other witness. Nevertheless, they chose to discuss their testimony and other matters relating to the case with each other while they waited to testify.

[10]    Further, to the extent that Mother claims that the juvenile court could not exclude the testimony at issue because she was not at fault for the violation, we disagree and note that Indiana Supreme Court precedent merely states that a

---

[1] We are also unconvinced by Mother's reliance on her claim that courts in Kentucky have allegedly adopted this view. Even if Mother's characterization of the Kentucky case law is accurate, decisions made by courts in Kentucky are not binding on us.

court *may* allow testimony when the party is not at fault, not that it must do so. *See generally, Heck v. State*, 552 N.E.2d 446, 452 (Ind. 1990) (providing that "[w]here there has been a violation of a separation order, the trial court, in the absence of connivance or collusion by the party calling the witness, *may* permit the witness to testify"). We are also unconvinced by Mother's reliance on the Indiana Supreme Court's decision in *Jiosa v. State*, 755 N.E.2d 605 (Ind. 2001) because the facts of *Jiosa* are easily distinguishable from the facts of the instant case. Unlike in the present case, the witness at issue in *Jiosa* was not at fault for the violation of the separation order. 755 N.E.2d at 607. The witness was in a place that she "had every right to be" when she inadvertently overheard a conversation between two individuals who had been observing the proceedings. *Id*. The witness did not seek out information or participate in any conversation about the trial. *Id*.

[11]     The witnesses at issue in this case knowingly and blatantly violated the separation order when they actively participated in numerous conversations about both the case and the testimony they planned to give. Given the record before us, we conclude that the violation of the juvenile court's order strikes to the heart of the rule providing for the separation of witnesses as it not only allowed the witnesses to gain knowledge of the circumstances surrounding the case and the substance of the testimony of other witnesses, but also allowed the witnesses to adjust their testimony accordingly. As such, we cannot say that the juvenile court abused its discretion in excluding the testimony of the witnesses who participated in the violation of its order.

[12] The judgment of the juvenile court is affirmed.

Kirsch, J., concurs.

Baker, J, concurs with opinion.

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the matter of the Paternity of E.M.S., | Court of Appeals Case No. 18A-JP-403 |
| Angela Marie Goodson, | |
| *Appellant-Respondent,* | |
| v. | |
| Jason Wyatt Schmittler, | |
| *Appellee-Petitioner.* | |

**Baker, Judge, concurring.**

[13]     I fully concur with the majority opinion. I write separately to note that Mother did not make an offer to prove regarding the content of the testimony of the character witnesses, had they been permitted to testify. Without knowing what the witnesses would have testified, we have no way of discerning whether their exclusion resulted in any prejudice to Mother. Therefore, even if we had found error, we would have deemed it to be harmless. I strongly encourage attorneys to make offers to prove in these situations.